IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **HOSTINGXTREME VENTURES, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No. 3:14-CV-1471-M |
| | § | |
| **BESPOKE GROUP, LLC, DIVYESH PATEL, and HINA PATEL,** | § | |
| | § | |
| **Defendants.** | § | Referred to U.S. Magistrate Judge |

## MEMORANDUM OPINION AND ORDER

Pursuant to the order dated November 3, 2015, this case has been referred for full case management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions. Before the Court is *Plaintiffs Motion in Limine to Exclude Evidence of an Unqualified Expert in Accordance with Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993)*. Based on the relevant filings, evidence, and applicable law, the motion is **DENIED**.

## I. BACKGROUND

This action arises out of a contract for the sale of 180 metric tons of "US origin dry green peas" between Bespoke Group, LLC[1] (Defendant) and Prosper Trade Company (Prosper). (Doc. 36 at 4.)[2] Prosper subsequently assigned its rights under the contract to HostingXtreme Ventures, LLC (Plaintiff). (*Id.* at 2.) Plaintiff claims that Defendant breached the contract when it did not deliver the peas by the agreed date, and it also asserts claims for including promissory estoppel,

---

[1] Defendant Divyesh Patel is the sole owner and manager of Bespoke Group, LLC, and Defendant Hina Patel is the sole member of Bespoke Group, LLC.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

fraud, interference with contractual obligations, negligent misrepresentation, and breach of the implied covenant of good faith and fair dealing. (*See id.* at 5-6.)

Defendant asserts impracticability as an affirmative defense for its non-performance of the contract. (*See* doc. 47 at 10.) It designated Mr. Terry Whiteside (Whiteside) as an agricultural transportation expert to testify about the dry green pea transportation market along the Burlington Northern/Santa Fe (BNSF) railroad lines during the relevant time period. (*See* doc. 78 at 6.) He is expected to testify that Defendant was unable to perform its contractual duties because of market factors and weather conditions affecting agricultural sales and transportation during the time of performance. (*See id.*)

Plaintiff now moves to exclude Whiteside's expert testimony under Federal Rule of Evidence 702 and his expert written report under Federal Rule of Civil Procedure 26(a)(2)(B). (Doc. 78.)

## II. TESTIMONY

Plaintiff argues that Defendant failed to meet its burden of proof to introduce Whiteside's expert testimony under Rule 702 because it is too narrow and "is not based on any of the facts that relate to this case." (*See id.* at 9.)

Rule 702 governs the admissibility of expert testimony and provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based upon sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under this rule, the main issue is whether a particular expert has "sufficient specialized knowledge to assist the jurors in deciding the particular issues in this case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999) (citations omitted). A court has discretion to keep an

expert witness from testifying if it finds that the witness is not qualified to testify in a particular field or on a given subject. *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999). The key factors in evaluating expert testimony are relevance and reliability. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).

The party offering the expert testimony has the burden of establishing that it is admissible under Rule 702. *See Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002). However, "the rejection of expert testimony is the exception rather than the rule." *Thomas v. Deloitte Consulting LP*, No. 3:02-CV-0343-M, 2004 WL 1960097, at *2 (N.D. Tex. Sept. 2, 2004).

**A.     Relevancy**

Plaintiff argues that Whiteside's testimony does not satisfy *Daubert's* relevancy prong because it focuses too narrowly on the BNSF railroad as the method to ship the dry green peas and should instead focus on Defendant's general ability to procure the peas. (*See* doc. 78 at 10.)

Relevancy is defined as evidence that has "any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401(a). The relevancy requirement ensures that the expert testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *See Daubert*, 509 U.S. at 592.

Whiteside's testimony goes to Defendant's affirmative defense of impracticability, i.e., that it failed to perform because it relied upon the BNSF railroad to deliver the peas. (*See* doc. 47 at 10; *see also* doc. 36 at 9-16.) It supports these allegations by delineating the delays and problems with the BNSF shipments of peas during the time of performance under the contract. (*See* doc. 78 at Exhibit A.) This testimony makes the impracticability defense more plausible because it includes specific facts about the conditions that caused the failure to perform. *See Mathis*, 302 F.3d at 460-61 (affirming the district court's finding that the expert testimony of an economist had to be admitted

3

because it made the party's arguments more plausible).

Whiteside's expert testimony also applies to many of Plaintiff's other claims. The complaint cites e-mail messages from Defendant about the BNSF delays as a basis for the claims of negligent misrepresentation and breach of the implied covenant of good faith and fair dealing. (*See* doc. 36 at 9-16.) It quotes at least five different e-mail messages from Defendant alleging that "BNSF is running with as much as of 6 to 8 weeks of delay in bringing cars or even picking up loaded cars . . . many members of the industry are suffering from this delay" and similar allegations. (*Id*. at 10.) Plaintiff alleges that "the statements [made by Defendant] . . . were false or made without the observance of reasonable commercial standards of fair dealing" because "the weather was not prohibitive to ship US Origin Dry Green Peas, and railcar arrival was not delayed." (*Id*. at 11.) Whiteside's testimony is relevant to the issue of BNSF railroad shipments of dry green peas during the time of performance because it tends to make a fact more or less probable than it would be without the evidence and can be helpful to the trier of fact on this issue.

**B.     Reliability**

Turning to *Daubert's* reliability prong, Plaintiff does not challenge Whiteside's credentials but instead argues that he should have considered additional data about the availability of dry green peas outside of the United States when forming his opinion. (*See* doc. 78 at 10.)

Reliability requires an assessment of "whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *See Daubert*, 509 U.S. at 592-93. The Supreme Court has suggested that trial courts examine a nonexclusive list of factors including whether a theory or technique has or can be tested, published, subjected to peer review, whether it has or can be subjected to standards controlling its operation, the known or potential rate of error, and whether it is generally accepted.

*Id*. at 593-94. The reliability determination ensures that the expert testimony is "supported by appropriate validation." *Id*. at 590.

According to his verified statement, Whiteside has worked for thirty-five years in the rail and freight transportation industry and is a registered practitioner before the Surface Transportation Board. (*See id*. at Exhibit A.) He also serves as the Chairman for the Alliance for Rail Competition, has written twelve articles on the issue of grain and produce transportation in the last ten years, and has represented agricultural production and transportation in thirteen cases/proceedings in the past four years. (*See id*.) His forty-seven page report includes detailed information about agricultural production and transportation in the United States during the relevant time period and cites to over eleven references, including decisions from the Surface Transportation Board, letters from the BNSF railroad, and federal government reports on the pertinent subjects. (*See id*.)

Plaintiff provides the website of Agroimpex, a Bulgarian grain and legume shipper, as evidence that he should have considered dry green pea production outside the United States. *See Yellow Pea Production Around the World,* http://agroimpex.net/yellow-peas-production-around-the-world/?lang=en (August 6, 2013). It points to a pie chart that combines dry green pea and white yellow pea production to show total production by country. Significantly, there is no way to separate dry green pea production from white yellow pea production except for a line that reads "[d]ry green peas are grown mainly in the United States." *Id*. This website is not enough to negate Whiteside's reliability because expert testimony should be excluded only if it is so "fundamentally unsupported" that it cannot assist the fact-finder in reaching an intelligent and sound verdict. *Slaughter v. Southern Talc Co.*, 919 F.2d 304, 306 (5th Cir. 1990) (citing *Viterbo v. Dow Chem. Co.,* 826 F.2d 420, 422 (5th Cir. 1987)). Plaintiff has not shown that the testimony is so unsupported by the evidence that it offers no expert assistance to the jury. Instead, Whiteside's testimony is

supported by reliable data and fulfills the reliability prong of *Daubert*.

Overall, Plaintiff's fundamental challenge is not that the facts and data upon which Whiteside relied were insufficient but, instead, that his opinions should have included additional information and considerations. This challenge goes to the weight rather than the admissibility of this evidence. *See Viterbo,* 826 F.2d at 422. Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Pipitone v. Biomatrix, Inc*., 288 F.3d 239, 250 (5th Cir. 2002) (quoting *Daubert*, 509 U.S. at 596).

In conclusion, Defendant has satisfied its burden of showing that Whiteside possesses the necessary qualifications to testify as an expert in this case.

### III. EXPERT REPORT

Plaintiff alleges that Whiteside failed to comply with Federal Rule of Civil Procedure 26(a)(2)(B) by failing to provide a complete statement of his opinions and a list of facts or data considered in his expert report.

Rule 26 requires a party to supply written reports from all experts retained to provide expert testimony in a case. *See* Fed. R. Civ. P. 26(a)(2)(B). These reports must include: (1) a complete statement of all opinions the witness will express and the basis and reasons for them; (2) the facts or data considered by the witness in forming them; (3) any exhibits that will be used to summarize or support them; (4) the witness's qualifications, including a list of all publications authored in the previous 10 years; (5) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (6) a statement of the compensation to be paid for the study and testimony in the case. Fed. R. Civ. P. 26(a)(2)(B)(i)-(vi). The purpose of the rule is to prevent a party from presenting "sketchy and vague" expert information that might lead to undue

surprise for the opposing party at trial. *See* Advisory Committee Notes to the 1993 Amendments to Rule 26. When a party does not make the disclosures required by Rule 26(a), Rule 37 provides for the automatic exclusion of such evidence from trial. *See* Fed. R. Civ. P. 37(c)(1).

As discussed, Whiteside's report analyzes pea production in the United States and how this commodity is transported from growers to shippers like Defendant. He explains how the BNSF railroad is the "dominant" carrier of peas grown in the United States, and how problems with locomotive power and very cold weather affected shipments scheduled for delivery in late 2013 and most of 2014. (*See* doc. 78 at Exhibit A.) He includes a summary section in which he concludes that "shippers [were unable] to accurately predict for their customers accurate delivery estimates" because a "service meltdown of this magnitude and the concentration of the effects in the northern tier states had not ever occurred before." (*Id.*) As the basis for his conclusions, Whiteside cites to over eleven sources, including decisions from the Surface Transportation Board, letters from the BNSF railroad, and federal government reports on the pertinent subjects.

Defendant has met its burden to show that Whiteside's report complies with Rule 26(a)(2)(B) by including the necessary information.

### IV. CONCLUSION

Plaintiff's motion to exclude Defendant's expert's testimony and report is **DENIED**.

**SO ORDERED this 30th day of June, 2016.**

*/s/ Irma Carrillo Ramirez*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

7