IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HOSTINGXTREME VENTURES, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:14-CV-1471-M |
| | § | |
| BESPOKE GROUP, LLC, DIVYESH PATEL, and HINA PATEL, | § | |
| | § | |
| Defendants. | § | Referred to U.S. Magistrate Judge |

## MEMORANDUM OPINION AND ORDER

Pursuant to the order dated November 3, 2015, this case has been referred for full case management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions. Before the Court is *Defendants' Motion to Exclude and Strike Testimony of Plaintiff's Designated Expert Darren Hudson and Brief in Support*, filed March 10, 2017 (doc. 339). Based on the relevant filings, evidence, and applicable law, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

This action arises out of a contract for the sale of 180 metric tons of "dry green peas" between Bespoke Group, LLC (Bespoke) and Prosper Trade Company (Prosper). (doc. 36 at 4.)[1] Prosper subsequently assigned its rights under the contract to HostingXtreme Ventures, LLC (Plaintiff), who brought the present suit against Bespoke, its sole owner and manager, Divyesh Patel (Divyesh), and Divyesh's wife, Hina Patel (Hina) (collectively Defendants).[2] (*See id.* at 2, 4.)

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

[2] Plaintiff recently voluntarily dismissed Hina. (*See* docs. 342, 378.)

Plaintiff claims that Bespoke breached the contract when it did not deliver the peas by the agreed date, and it also asserts claims for promissory estoppel, fraud, interference with contractual obligations, negligent misrepresentation, and breach of the implied covenant of good faith and fair dealing. (*See id*. at 5-6.) Defendants pleaded the affirmative defense of impracticability and designated Mr. Terry Whiteside (Whiteside) as an agricultural transportation expert who is expected to testify that they were unable to perform under the contract because of market factors and weather conditions affecting agricultural sales and transportation during the time of performance.[3] (*See* doc. 78 at 6.)

Plaintiff, in response, designated Mr. Darren Hudson (Hudson), an agricultural economist, to provide two expert opinions: (1) the market prices for dried green peas shipped from the United States to India during the relevant shipment period, and (2) "the plausibility of weather related excessive delays" as it relates to this suit. (doc. 340 at 141-42.) He holds a Ph.D in Agricultural and Applied Economics and is the Chair of Agricultural Competitiveness at Texas Tech University. (*Id*. at 140.) He is expected to testify that the relevant market price for dried green peas was between $733.50 and $775.00 per metric ton and that the peas "could have been shipped [by Defendants] from Lewiston, ID to India" during the time period of the contract in spite of any weather delays. (*Id*. at 142.) He additionally opined that Defendants "should have anticipated [the prospect of weather delays during the winter months] and had alternative delivery plans and/or business interruption insurance to ameliorate the potential effects of bad weather." (*Id*.)

On March 10, 2017, Defendants moved to exclude and strike both of Hudson's expert opinions under Federal Rule of Evidence 702. (doc. 339.) With a timely filed response and reply,

---

[3] Plaintiff previously moved to exclude Whiteside's testimony under the *Daubert* standard, but the motion was denied on June 30, 2016. (*See* docs. 78, 148.)

this motion is ripe for determination. (*See* docs. 356, 369.)

## II. FEDERAL RULE OF EVIDENCE 702

Defendants argue that Plaintiff failed to meet its burden of proof to introduce Hudson's expert testimony under Rule 702 because neither of his opinions are relevant or reliable. (*See* doc. 339 at 5-8.)

Rule 702 governs the admissibility of expert testimony and provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based upon sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under this rule, the main issue is whether a particular expert has "sufficient specialized knowledge to assist the jurors in deciding the particular issues in this case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999) (citations omitted). A court has discretion to keep an expert witness from testifying if it finds that the witness is not qualified to testify in a particular field or on a given subject. *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999). The key factors in evaluating expert testimony are relevance and reliability. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).

The burden is on the proponent of the expert testimony to establish its admissibility by a preponderance of the evidence. *See id.* at 592 n.10. However, the court's inquiry is flexible in that "[t]he relevance and reliability of expert testimony turns upon its nature and the purpose for which its proponent offers it." *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010) (citation omitted). "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the [trier

3

of fact's] consideration." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *see Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 783 (N.D. Tex. 2013)

### A. "Dried Pea Prices"

Defendants argue that Hudson's opinions on the fair market value of dried green peas should be excluded as irrelevant. (*See* doc. 339 at 10-18.)

#### 1. *Cover Damages*

Defendants first contend that Hudson's expert opinion on the fair market value of the dried green peas is irrelevant because "Plaintiff has elected cover damages, and as such, [it] is not entitled to fair market value damages." (*Id*. at 11.)

Under Texas law, a buyer's remedies for a breach of a contract of sale by the seller are set forth in chapter two of the Texas Business and Commerce Code. *See* Tex. Bus. & Com. Code §§ 2.711, 2.712, 2.713. When a seller fails to deliver contracted goods, a buyer may cancel the contract and can recover, in addition to any funds paid, either (1) "cover" damages for purchasing goods in substitution of those due from the seller consisting of the difference between the price of the goods in the contract and price of the "cover" goods, or (2) the difference between the contract price and market price at the time it learned of the breach. *Id.* at § 2.711. The "goods purchased as 'cover' need not be identical to those provided in the contract, but must be commercially usable as reasonable substitutes." *Robax Corp. v. Prof'l Parks, Inc.*, No. 3:07-CV-1399-D, 2008 WL 3244150, at *12 (N.D. Tex. Aug. 8, 2008) (citation omitted). A buyer may properly "cover" by "making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution of those due from the seller," where "the issue of good faith in effecting 'cover' is

4

a question of fact to be resolved by the fact finder." *Mueller v. McGill*, 870 S.W.2d 673, 675 (Tex. App.–Houston [1st Dist.] 1994, writ denied) (citations omitted).

In its second amended complaint, Plaintiff asserts damages because it had to "cover" Defendants' failure to perform by purchasing dried green peas for $725.00 per metric ton, which was nearly $200.00 more per ton than the price in the contract between Bespoke and Prosper. (doc. 36 at 9, 11, 13, 15.) It repeatedly states that Prosper had to "cover its requirements" for dried green peas from other vendors at the increased price point that caused damages "in an amount not less than $31,140.00." (*See id.* at 9, 13, 15.) In response to the motion to strike, however, it argues that it pleaded both cover damages and market price damages, so Hudson's opinion on the fair market price of peas is admissible. (*See* doc. 356 at 2-3.)

Regardless of whether Plaintiff pleaded cover damages, fair market damages, or both, Hudson's expert opinion on the market value of the peas during the specific time frame is relevant to the key issue of the amount of damages to which Plaintiff is entitled. *See* Fed. R. Evid. 401(a) (defining relevancy as evidence that has "any tendency to make a fact more or less probable than it would be without the evidence"). If Plaintiff may recover fair market damages, then Hudson's testimony is directly relevant to the actual amount that it can recover. If it may only recover "cover damages," then Hudson's testimony is relevant as to whether Plaintiff covered "in good faith" with a "reasonable purchase of . . . goods in substitution of those due from the seller." Tex. Bus. & Com. Code § 2.712(a). Plaintiff alleges that it covered by buying dried peas at a rate that was approximately $200.00 per metric ton more than the original contract, and Hudson's expert opinion comports with these allegations that the market value of dried green peas at the relevant time and place had significantly increased. (*See* docs. 36 at 15, 340 at 141.) Even if Plaintiff failed to plead market damages and is limited to the amount of the "cover," Hudson's expert opinion makes the

5

reasonableness and "good faith" purchase of the higher priced peas "more or less probable than it would be without the evidence" and will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 592.

Because Hudson's testimony is relevant to the key issue of damages in this suit, it should not be excluded on this basis. *See Mathis v. Exxon Corp.*, 302 F.3d 448, 460-61 (5th Cir. 2002) (affirming the district court's admission of the expert testimony of an economist as relevant because it made the party's arguments more plausible).

### 2. *Basis of Opinion*

Defendants next contend that Hudson's expert opinion on the fair market value of dried green peas should be excluded because "the source of data for Hudson's opinion is irrelevant, unreliable, and insufficient." (doc. 339 at 6.)

In his expert report, Hudson looked at two types of information when developing his opinion on dried pea prices: (1) unit value estimates from the website of the United States Department of Agriculture's (USDA) Foreign Agricultural Service, and (2) a sample of four invoices for similar transactions during the relevant time frame that were provided by Plaintiff's counsel. (doc. 340 at 141.) He determined that the USDA values were an "inadequate representation of the full price" because they did not include all shipping expenses, did not limit the starting and ending ports between the U.S. and India, and did not limit the quantities specific to this contract. (*Id.*) Hudson then reviewed the four transaction invoices "between an unrelated company and various buyers in India and Sri Lanka for transactions with shipping dates during a similar window of shipments as the contract in question" to conclude that the fair market price of dried peas in the relevant market was approximately between $733.50 and $775.00 per metric ton. (*Id.*) He further noted that it is "possible that shipment size could result in different per [metric ton] prices." (*Id.*)

6

Defendants argue that the invoices that Hudson relied upon are unreliable because they were "unauthenticated," were "fed to Hudson [by Plaintiff's counsel] solely for the purpose of Hudson's testimony in the litigation," and were insufficient data from which to form an opinion. (doc. 339 at 12-14.) They further argue that the four invoices are not relevant because they include the following differences from the contract in this suit: different grades of peas; unknown origin of the peas; involved "bagged" peas as opposed to "bulk" peas; smaller shipment sizes; different shipping terms; and two of the invoices involve different ports of destination. (*Id*. at 15-17.) Plaintiff responds that Hudson's computation of the market price was in accordance with the applicable statutory provisions and constitutes a "commercially reasonable" method of determining fair market value. (doc. 356 at 5-6.)

Though framed as a contest to the reliability and relevancy of Hudson's testimony, Defendants' challenges go to the weight, not admissibility, of the expert opinion. *See Primrose Operating Co. v. Nat'l American Ins. Co.*, 382 F.3d 546, 562-63 (5th Cir. 2004) (holding that questions relating to the bases and sources of an expert's opinion generally go to the weight of the opinion rather than its admissibility because it is "the role of the adversarial system, not the court, to highlight weak evidence"); *see also Fair v. Allen*, 669 F.3d 601, 607 (5th Cir. 2012) (noting that an expert's opinion will be excluded on this ground only when, for example, it is "completely unsupported," and "the opposing party must expose that lack of reliability"). Here, Hudson first conducted his own search of the data from the USDA's Foreign Agricultural Service[4] and, after using his agricultural economist expertise to determine that this data was an inadequate

---

[4] Defendants also addressed alleged flaws on the USDA search results "to the extent Hudson or Plaintiff attempt to rely on the USDA website" as evidence of market value. (doc. 339 at 18-21.) Because neither Hudson nor Plaintiff relies upon the data from the USDA website as proof of the fair market value of dried green peas, these arguments need not be considered.

representation because it failed to include pricing for terms like freight or shipping, he then reviewed four similar transaction invoices that included the terms missing from the USDA data set as the basis for his opinion. (doc. 340 at 141.) This is sufficient to show that Hudson's testimony is not so fundamentally unsupported that it should be excluded. *See* Tex. Bus. & Com. Code § 2.723(a)-(b) (explaining that the market price "shall be determined according to the price of such goods prevailing at the time when the aggrieved party learned of the repudiation").

Defendants' arguments as to the basis of Hudson's opinion should instead be addressed by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) (quoting *Daubert*, 509 U.S. at 596). Hudson, in his report, even acknowledges that it "is possible that shipment size could result in different per [metric ton] prices" as a potential source of error on his opinion on the fair market value of peas. *See Wackman v. Rubsamen*, 602 F.3d 391, 402–03 (5th Cir. 2010) (concluding that some "analytical gaps," where acknowledged by the expert and explained, go to the weight of the evidence rather than to admissibility). Defendants' attack goes to the weight to be given to his expert testimony. *See Orthoflex, Inc.*, 986 F. Supp. 2d at 802 (finding that "the fact that [the expert] inspected only two units [in forming his expert opinion] goes to the weight, not admissibility, of his opinion testimony).

Plaintiff has met its burden to establish that Hudson's expert testimony on the fair market value of dried green peas is relevant and reliable. See *Equal Emp't Opportunity Comm'n v. S&B Indus., Inc.*, No. 3:15-CV-0641-D, 2017 WL 345641, at *7 (N.D. Tex. Jan. 24, 2017) (denying motion to exclude expert testimony based upon the expert's "allegedly limited and unreliable data, flawed methods, or faulty assumptions" because those "deficiencies . . . can be attacked at trial"). Defendants' motion to exclude Hudson's expert opinion on "Dried Pea Prices" is **DENIED**.

B.  **Opinion on "Shipping Conditions and Delivery"**

Defendants argue that Hudson's expert opinion on shipping conditions and delivery should be excluded because he is not qualified to make this opinion and because it is based upon unreliable data and speculation. (doc. 339 at 22-26.)

Here, Hudson states that he had been asked to address "the plausibility of weather related excessive delays in shipping from Lewiston, ID or Chester, MT to fulfill the contract terms." (doc. 340 at 142.) He reviewed two types of documents in making his opinion: (1) the report from Plaintiff's expert, Terry Whiteside, on agricultural shipping, and (2) six bills of lading that Defendants produced during discovery. (*Id*.) He noted that Whiteside's report "paints a picture of low availability of rail services from various sources that can be used to explain the delays in contract delivery by Defendants." (*Id*.) He further noted that the bills of lading showed that Defendants shipped a total of six shipments to various destinations, all originating in Lewiston, Idaho, and shipped through the port of Seattle during the relevant time period. (*Id*.) Hudson concluded that because Defendants made other shipments during the relevant time period, Defendants "could have shipped from Lewiston, Idaho, to India during the time period in question." (*Id*.) Hudson further opined that Defendants "should have anticipated the prospect [of bad weather delays] and had alternative delivery plans and/or business interruption insurance to ameliorate the potential effects of bad weather." (*Id*.) During his deposition, Hudson stated that he looked at the "National Weather Service website . . . over that time period" but that he is "absolutely not" a weather expert. (*Id*. at 13, 120-21.) He further stated that he was not an expert on "rail service levels or conditions in the United States" or "shipping logistics" and that he did not have "an expert opinion or an opinion to offer on rail availability." (*Id*. at 14-15, 16-17, 106.)

Plaintiff argues that Hudson's opinion should be admitted because Whiteside did not address

9

the issue of whether or not it was "plausible for the Defendants to have shipped goods to other buyers in the same time frame." (doc. 356 at 7.) Plaintiff, however, fails to address why Hudson should be designated as an expert on weather related shipping delays in light of the fact that he stated at his deposition that he is "absolutely not" an expert as to the weather, rail services, or shipping logistics, all of which were the foundations of Whiteside's expert report. *See United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (noting that the first requirement is that the court "must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education'"). Hudson's opinion is based upon "common-sense" reasoning and appears to be an attempt to present Plaintiff's trial arguments as expert opinions. *See Orthoflex, Inc.*, 986 F. Supp. 2d at 798 ("Nor is it acceptable for a party to call a witness who, after synthesizing the party's trial arguments, presents them as expert opinions."). Hudson's rationale for his opinion, as stated in his deposition, is based upon the theory that "if [Defendants] can ship six shipments of similar product from the same location, then the claim that they couldn't get rail access is–is a bit suspect." (doc. 340 at 106-107.) There is no explanation on the reliable basis or principle underlying his opinions as to Defendants' capability of shipping during the weather related delays or what alternative delivery plans they should have anticipated for, and it instead appears to be lay witness testimony presented as an expert opinion. *See IQ Prod. Co. v. Pennzoil Prod. Co.*, 305 F.3d 368, 376 (5th Cir. 2002) (affirming the exclusion of an expert opinion based upon the expert's "common sense"); *see also Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 382 (5th Cir. 1996) (affirming exclusion of expert testimony after the expert "testified that . . . his expertise was limited [to a different aspect than his testimony covered]" and he also "acknowledged that he did not have the proper background to offer a determination as to [the relevant issue]").

Plaintiff failed to sustain its burden to show that Hudson is an expert on "weather related

excessive delays in shipping" and that his expert testimony is based upon reliable principles or methods. Accordingly, Defendants' motion to exclude Hudson's expert opinion on "Shipping Conditions and Delivery" is **GRANTED**.

### III. CONCLUSION

Defendants' motion to exclude and strike Plaintiff's expert testimony is **GRANTED IN PART** and **DENIED IN PART**. Darren Hudson's opinions contained in the section identified as "Shipping Conditions and Delivery" are stricken and excluded.

**SO ORDERED this 9th day of August, 2017.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE