# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **HOSTINGXTREME VENTURES, LLC** | § | |
| **and DOES 1 through 10 inclusive,** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:14-CV-1471-M** |
| | § | |
| **BESPOKE GROUP, LLC, DIVYESH** | § | |
| **PATEL, and HINA PATEL, and DOES** | § | |
| **1 through 10 inclusive,** | § | |
| **Defendants.** | § | **Referred to U.S. Magistrate Judge** |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the order dated November 3, 2015, this case has been referred for full case management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions. Before the Court for recommendation are *Defendants Bespoke Group, LLC's and Divyesh Patel's Joint Motion for Summary Judgment*, filed February 24, 2017 (doc. 332), and *Plaintiff's Motion for Partial Summary Judgment*,[1] filed April 6, 2017 (doc. 359). Based on the relevant filings, evidence, and applicable law, the defendants' motion should be **GRANTED IN PART** and **DENIED IN PART,** and the plaintiff's motion should be **DENIED**.

## I. BACKGROUND

This suit arises out of a contract between Bespoke Group, LLC (Bespoke) and Prosper Trade Company (Prosper) for the purchase and delivery of 180 metric tons of bulk "US origin dry green peas" at the price of $552.00 per ton to be delivered by Bespoke from the United States to Prosper in Nhava Sheva, India. (doc. 36 at 4-5.)[2]

---

[1] This motion was initially titled as "Plaintiff's Motion to Enforce Discovery", but Plaintiff subsequently filed a notice correcting the title. (docs. 359, 365.)

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

Before the contract was executed, Divyesh Patel (Divyesh), the sole owner and manager of Bespoke, met with Hitesh Sayta (Hitesh), an individual who "held a mandate on behalf [of Prosper]" to buy dried green peas. (*Id*. at 4.) According to Hitesh, Divyesh represented that he had an "adequate inventory" of dried green peas that "he could ship subsequent to entering into the purported contract." (*Id*. at 4-5.) They negotiated the details of the contract and "agreed that a formal written contract would be drawn up by [Divyesh] and sent out via email to Hitesh." (*Id*. at 5.) Though not identified in the written contract, Prosper intended to sell these peas directly to Ask Re Ltd. (Ask Re) in Hong Kong upon receipt. (*Id*. at 11.) Divyesh later notified Hitesh via e-mail that Bespoke was experiencing difficulties in shipping the peas due to a lack of rail car transportation caused by bad weather. (*Id*. at 5.) Defendants failed to deliver the peas as required by the contract, and Prosper "had to cover its onward contractual obligations [to Ask Re] . . . [by] purchas[ing] goods from another seller" at an increased price. (*Id*. at 9.)

Prosper subsequently assigned its rights under the contract to HostingXtreme Ventures, LLC (Plaintiff), which then sued Bespoke, Divyesh, and his wife, Hina Patel (Hina) (collectively Defendants). (*See id.* at 2, 4.) It later voluntarily dismissed Hina. (docs. 342, 378.) In its second amended complaint, Plaintiff brings claims for breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, common law fraud, intentional interference with contractual rights, and negligent misrepresentation. (*See* doc. 36 at 8-15.)[3]

Defendants and Plaintiff filed competing summary judgment motions on February 24, 2017, and April 6, 2017, respectively. (docs. 333, 360.) With timely filed responses (docs. 363, 373) and replies (docs. 370, 375), these motions are ripe for recommendation.

---

[3] Plaintiff named "Does 1 through 10 inclusive" as its co-plaintiffs and named "Does 1 through 10 inclusive" as defendants. (doc. 36 at 1.) None of the "Does" is identified in Plaintiff's second amended complaint. (*See id.*)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record that reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party can also meet its summary judgment burden by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325 (internal quotation omitted).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Id.* at 324. To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-movant must show that the evidence is sufficient to support a resolution of the factual issue in her favor. *Anderson*, 477 U.S. at 249. The nonmovant's burden cannot be satisfied by conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence. *Douglass v. United Servs. Auto. Ass'n*, 65 F.3d 452, 459 (5th Cir. 1995), *revised on other grounds*, 79 F.3d 1415 (5th Cir. 1995) (en banc). "If the [nonmoving party's] theory is . . . senseless [where] no reasonable jury could find in its favor, [then] summary judgment should be granted." *Lottinger v. Shell Oil Co.*, 143 F. Supp. 2d 743, 751 (S.D. Tex. 2001) (quoting *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 468-69 (1992)).

"The parties may satisfy their respective burdens by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials.'" *Rooters v. State Farm Lloyds*, 428 F. App'x 441, 445 (5th Cir. 2011) (citing Fed. R. Civ. P. 56(c)(1)). While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary judgment burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). There is also "no genuine issue as to any material fact [if] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to her case and as to which she will bear the burden of proof at trial. *Id.* at 322-23.[4]

### III. BREACH OF CONTRACT

Both parties seek summary judgment on Plaintiff's breach of contract claim. (docs. 333 at 17-28, 360 at 8-22.) Plaintiff argues that it properly pleaded a claim for oral contract and provided evidence of the fair market value of the dried green peas through its expert, Mr. Darren Hudson (Hudson), and it should be granted summary judgment under an oral contract theory. (docs. 363 at 3, 360 at 8.) Defendants contend that they are entitled to summary judgment because Plaintiff

---

[4] Rule 56 imposes no obligation "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

"failed to provide competent and admissible evidence of its damages" under the written contract. (doc. 333 at 17-28.)

The elements of a cause of action for breach of contract are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach. *See Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 628 (N.D. Tex. 2010) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.–Houston [14th Dist.] 2005, no pet.)).

## A.      Oral Contract

Plaintiff moves for summary judgment on its breach of contract claim, which it contends is premised upon an oral contract between Divyesh and Prosper. (*See* doc. 360 at 8-10.) Defendants contend that this theory is not supported by Plaintiff's pleadings and fails as a matter of law. (doc. 373 at 18-21.)

In its second amended complaint, Plaintiff asserts that its claim of "Breach of Written Contract" against Divyesh is "based upon the doctrine of lifting of the corporate veil" where Divyesh "personally represented to [Hitesh] that he had an inventory of the goods." (doc. 36 at 8-9.) On summary judgment, Plaintiff instead argues that it "need not resort to the piercing of the veil of [Bespoke] to establish liability of [Divyesh]" because privity of contract exists directly from Divyesh to Prosper when an oral contract "was entered into prior to the written document being circulated." (doc. 360 at 17.) It now contends that the signed written contract attached as an exhibit to its second amended complaint is simply a "written memorandum" of the oral contract previously entered into between Divyesh and Hitesh as Prosper's representative. (*Id*. at 10, 25.) It argues that its oral contract theory was formally pleaded, "given that the facts leading up to the contract have been pleaded," namely that Hitesh and Divyesh met and negotiated the details of the contract before

5

the written contract was signed, and because "it [was] implicit in [its second amended complaint] that all the aforesaid items were agreed verbally." (doc. 375 at 5-6.)

The second amended complaint expressly entitles the contract claim as "Breach of Written Contract;" that section explains the communications between the parties about the written contract. (doc. 36 at 8.) Plaintiff's allegations asserting a breach of contract claim based upon an oral contract between Divyesh and Prosper were neither "abundantly clear" nor "implicit" in its second amended complaint, as now alleged. (doc. 375 at 6.) While Plaintiff correctly points out that the first element of a breach of contract action does not differentiate between the existence of written and oral contracts, its identification of the claim as a "Breach of Written Contract" and failure to alternatively mention the existence of an oral contract does not provide fair notice of the factual basis of a breach of contract claim based upon an oral contract.[5] *See Narvaez*, 757 F. Supp. 2d at 628 (noting the elements of a cause of action for breach of contract); *see also Stoner v. Thompson*, 578 S.W.2d 679, 682-83 (Tex. 1979) (citation omitted) (explaining that a "plaintiff's pleadings must be adequate for the court to be able, from an examination of the plaintiff's pleadings alone, to ascertain with reasonable certainty . . . the elements of plaintiff's cause of action and the relief sought with sufficient information upon which to base a judgment"). Plaintiff expressly raises this theory for the first time on summary judgment, after the deadlines for amendment and for alleging new affirmative defenses, such as the statute of frauds. *See Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("There must be a sufficient basis in the pleadings for the judgment entered.").

---

[5] Defendants provided a portion of the transcript of a motion hearing held in this case on January 6, 2015. (doc. 371-1.) During this hearing, the district judge stated to Plaintiff's counsel that "[t]his isn't a case where there's an oral contract. There's a contract. It's attached to the papers." (doc. 371-1 at 5.) Plaintiff failed to respond or provide any controverting portions of the transcript.

Because Plaintiff's oral contract theory has not been previously fairly pleaded, it will not be considered for the first time on summary judgment. *See Cutrera v. Bd. of Supervisors*, 429 F.3d 108, 113 (5th Cir. 2005) (explaining that a claim that "is not raised in the complaint, but, rather, is raised only in response to a motion for summary judgment is not properly before the court"); *see also Narvaez*, 757 F. Supp. 2d at 627 (striking new allegations made during a motion for summary judgment because it did not "constitute evidentiary development of any of those bases, and therefore impermissibly raise[d] a new claim for breach of contract").[6] Plaintiff's motion should be denied.

## B.      Damages

Defendants seek summary judgment on grounds that Plaintiff seeks cover damages under the written contract in the amount of $58,140.00, but it has failed to provide any evidence showing a genuine issue of material fact as to this amount. (doc. 333 at 17-20.)

Under Texas law, a buyer's remedies for a breach of a contract of sale by the seller are set forth in chapter two of the Texas Business and Commerce Code. *See* Tex. Bus. & Com. Code §§ 2.711, 2.712, 2.713. When a seller fails to deliver contracted goods, a buyer may cancel the contract and can recover damages as either (1) "cover" damages by purchasing goods in substitution of those due from the seller consisting of the difference between the price of the goods in the contract and price of the "cover" goods, or (2) the difference between the contract price and "market price" at the time it learned of the breach. *Id.* at § 2.711. The "goods purchased as 'cover' need not be identical to those provided in the contract, but must be commercially usable as reasonable substitutes." *Robax*

---

[6] Plaintiff alternatively seeks leave to amend its second amended complaint if its "effective complaint is lacking." (doc. 375 at 6.) Its request is filed well after the deadline for amending pleadings. (*See* doc. 146.) It also does not comply with the local civil rules for the Northern District of Texas, which provide that when a party files a motion for leave to file an amended pleading, the party must attach the proposed amended pleading as an exhibit. Compliance with the rules of procedure is required of all parties and leave to amend may be denied for non-compliance. *See Shabazz v. Franklin*, 380 F. Supp. 2d 793, 798 (N.D. Tex. 2005) (accepting recommendation). The non-compliant and out-of-time motion is denied.

*Corp. v. Prof'l Parks, Inc.*, No. 3:07-CV-1399-D, 2008 WL 3244150, at *12 (N.D. Tex. Aug. 8, 2008). Plaintiffs may plead and submit evidence of both cover damages and market price damages, but they are limited to the damages sustained if the buyer "covered" for the seller's failure to deliver. *See* Tex. Bus. & Com. Code § 2.713 cmt.5 (noting that "[t]he present section [on market price damages] provides a remedy which is completely alternative to cover under the preceding section and applies only when and to the extent that the buyer has not covered").

Defendants note that Plaintiff's second amended complaint alleges that as a basis for its injury that "Prosper Trade had to cover its onward contractual obligations, and it had to purchase goods from another seller" at an increased price of $725.00 per metric ton resulting in damages "in an amount not less than $31,140.00" plus expenses for "transportation costs, warehousing costs, insurance expenses, commission and brokerage, [and] sales tax." (doc. 36 at 9.) They also point to Plaintiff's interrogatory responses, which specifically identify cover damages in the amount of $58,140.00 broken down as: $31,140.00 in damages for replacement peas (due to an increase of $173.00[7] per metric ton multiplied by 180 tons); $15,000.00 as damages for incidental and consequential damages; and $12,000.00 in damages for Prosper's "idle labor costs." (doc. 333 at 18.) Defendants point to a failure to produce admissible evidence, such as authenticated invoices, bills of lading, or affidavit testimony, to substantiate any of these amounts during the discovery period. (*Id.* at 19-23.) Accordingly, Defendants have met their summary judgment burden to show a complete failure of proof to substantiate the essential element of damages in Plaintiff's breach of contract claim.

The burden now shifts to Plaintiff to identify evidence in the record raising a genuine issue

---

[7] This amount is calculated by subtracting the contract price of $552.00 per metric ton from the $725.00 per metric ton cost of the replacement peas. (*See* doc. 36.)

of material fact on its damages. Plaintiff argues that it does not need to provide evidence of the cover damages that Prosper actually sustained, and it instead provides an expert report from Hudson stating that the market price value of dried green peas at the relevant time and location was between $733.50 and $775.00 per metric ton, which is over $200.00 more per metric ton than the amount in the written contract. (*See id.* at 11-13.)

### 1. *Market Price Damages*

Plaintiff responds that it pleaded "that the price of goods rose significantly" as the basis for its recovery, citing four paragraphs[8] in its second amended complaint. (doc. 363 at 9.) Only one of those paragraphs is included in its breach of contract section by reference, however, and none of them indicate that it is seeking market price damages on this claim. The breach of contract claim alleges that the damages were based upon Prosper "purchas[ing] goods from another seller" at a higher price with additional expenses because it "had to cover its onward contractual obligations." (*Id*. at 9.) Plaintiff pleaded damages related only to the actual amount that Prosper had to "cover" due to Defendants' breach, not the market price difference. (*See id.* at 9-13.) It has the burden to provide some evidence of cover damages to show a genuine issue of material fact to preclude summary judgment on its claim. *See Dyll v. Adams*, 167 F.3d 945, 946-47 (5th Cir. 1999) ("Texas law requires that damages be established with a reasonable degree of certainty. . . . Although damages need not be established with mathematical precision, the evidence must provide a basis for

---

[8] These paragraphs are as follows: (1) "On February 19, 2014, Divyesh Patel stated that in light of the price advancing to approximately $725.00 [per metric ton] the contract was not favorable to him." (doc. 36 at 6); (2) "The statements . . . were false because the weather was not prohibitive to ship US Origin Dry Green Peas, and railcar arrival was not delayed. Prosper Trade relied upon these false statements . . . to its detriment and lost money because of the rise in the price of goods, and its consequent loss on its forward obligation to Ask Re." (*Id*. at 11); (3) "These statements directly and proximately caused significant harm to Prosper, because the price of the goods moved up significantly from $552.00 to $725.00 per metric ton." (*Id*. at 11); (4) "The Defendants intentionally, willfully, and fraudulently failed to ship the goods, in light of the fact that the price of green peas had gone up to $725.00 [per ton]. Prosper lost more than $31,000.00 because they had to buy peas from the market to cover their forward requirements" (*Id*. at 13).

reasonable inferences.") Plaintiff fails to provide any evidence of cover damages. It does not cite to any authority allowing evidence of the market price to be sufficient evidence of damages to preclude summary judgment when a plaintiff has solely pleaded cover damages.[9] (*See* doc. 363.) Plaintiff has failed to provide sufficient evidence to create a genuine issue of material fact regarding the issue of cover damages on its breach of contract claim.

## 2. *Cover Damages*

Even if the complaint may be construed as having pleaded market damages as well as cover damages, Plaintiff would still be limited to those cover damages because market price damages "appl[y] only when and to the extent that the buyer has not covered." Tex. Bus. & Com. Code § 2.713 cmt.5. When a seller breaches a contract by failing to deliver goods, the buyer at that time may choose between cover damages under § 2.712 or market price damages under § 2.713(a).[10] *See TXU Portfolio Mgmt. Co., L.P. v. FPL Energy, LLC*, No. 05-08-01584-CV, 2016 WL 4410252, at *9 (Tex. App.–Dallas Aug. 18, 2016, no pet.) (explaining that "as a matter of unambiguous statutory language, a buyer aggrieved by a seller's failure to deliver the contractually required quantity of goods may either effect cover or recover market damages"). Though cover is not a mandatory remedy, the buyer is limited to those cover damages should he elect to do so, and its damages are

___

[9] Plaintiff cites to *Tennell v. Esteve Cotton Co.*, 546 S.W.2d 346, 356 (Tex. App.–Amarillo 1976, writ ref'd n.r.e.) for the allegation that "when proof of cover is lacking, evidence of market price is admissible." (doc. 363 at 11.) In *Tennell*, the plaintiff filed suit immediately upon the seller's breach and pleaded both cover and market damages before it elected to cover or not. *See*, 546 S.W.2d at 350-51. Here, Plaintiff frequently alleges in its second amended complaint that cover was fully effectuated before it filed suit. (*See* doc. 36.)

[10] Plaintiff cites to *TXU Portfolio Mgmt. Co., L.P. v. FPL Energy, LLC*, No. 05-08-01584-CV, 2016 WL 4410252 (Tex. App.–Dallas Aug. 18, 2016, no pet.), as having "expressly rejected" Defendants' argument that "once cover is effected the buyer is precluded from claiming market price damages." (doc. 375 at 8.) At issue in *TXU Portfolio* was whether the plaintiff's pre-breach "daily balancing activities" constituted "cover" for purposes of the post-breach purchase required under the Texas Business and Commerce Code. *Id.* at *5. It held that "pre-breach balancing transactions for the purpose of meeting customer needs" were not covering transactions that barred a market damages theory. *Id.* at *11. Here, Plaintiff does not allege any "pre-breach balancing transactions," only that Prosper intentionally and properly made a "cover purchase" of dried green peas after Defendants failed to deliver under the contract. (*See* doc. 36 at 9, 11, 13, 15.)

to be calculated in context of the price paid for the cover and other incidental costs to the extent that reasonable cover was obtained. *See Aztec Corp. v. Tubular Steel, Inc.*, 758 S.W.2d 793, 800 (Tex. App.–Houston [14th Dist.] 1988, no writ); *see also Aquamarine Assoc. v. Burton Shipyard*, 645 S.W.2d 477, 479 (Tex. App.–Beaumont 1982, writ granted), *affirmed by*, 659 S.W.2d 820 (Tex.1983) (explaining that market price damages under § 2.713 are "applicable only when the buyer has not covered").

Here, Plaintiff consistently alleges in its second amended complaint and discovery responses that Prosper covered after Defendants failed to deliver the peas by buying similar dried green peas in the amount of $725.00 per metric ton, which resulted in an increase from the original contract price of $31,140.00, plus incidental damages. (docs. 36 at 8-9, 11, 13, 15, 16, 334 at 17-18, 31.) It now seeks damages based on the market price of the peas that, according to Hudson's expert report, was actually higher than what Prosper paid. (*See* doc. 363 at 11-13.) It argues that it should be allowed the higher market price damages, because without these damages, it "would be left with no remedy for the breach" as a result of "proof problems" associated with proving cover damages for purchases that occurred in India. (*Id*. at 10.) Regardless of any "proof problems," Prosper elected to cover at the time of the breach by purchasing similar goods, and as the comments to the statute on market price damages explain, Plaintiff's damages are to be determined by the actual amount paid to cover and not the market price. *See* Tex. Bus. & Com. Code § 2.713 cmt.5 (noting that "[t]he present section [on market price damages] provides a remedy which is completely alternative to cover under the preceding section and **applies only when and to the extent that the buyer has not covered**") (**emphasis added**). Plaintiff fails to provide any evidence on both its alleged cover damages and its alleged incidental and consequential damages. It therefore fails to sustain its summary judgment burden to provide evidence on the essential element of damages. *See In re*

11

*Wilshire Homes Houston, Ltd.*, No. 10-32302-H2, 2013 WL 5162077, at *9 (S.D. Tex. Sept. 11, 2013) ("Summary judgment should be granted where the plaintiff cannot establish damages or has no competent evidence of damages.").

Plaintiff has failed to meet its burden to show a genuine issue of material fact on the damages element of its breach of contract claim. Defendants' motion for summary judgment should therefore be granted on this claim.[11]

## C.    <u>Attorneys' Fees</u>

Defendants further seek summary judgment on Plaintiff's claim for attorneys' fees on its breach of contract claim under Tex. Civ. Prac. & Rem. Code § 38.001. (doc. 333 at 27.) Because it has been recommended that Plaintiff's claims for breach of contract against both Divyesh and Bespoke should be dismissed on summary judgment, Plaintiff is not entitled to attorneys' fees under § 38.001. *See* Tex. Civ. Prac. & Rem. Code § 38.001 (providing for recovery of attorneys' fees only for "valid claims"); *see Rodgers v. RAB Investments, Ltd.*, 816 S.W.2d 543, 551 (Tex. App.–Dallas 1991, no writ) (noting that a party "must prevail" on the cause of action for which attorneys' fees are available). Defendants' motion for summary judgment should be granted on this basis.[12]

## IV. PROMISSORY ESTOPPEL & BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Defendants next move for summary judgment on Plaintiff's claims of promissory estoppel

---

[11] Because dismissal of the breach of contract claim has been recommended, Plaintiff's arguments in its motion for summary judgment on Defendants' affirmative defenses for failure to perform under the contract need not be considered. (*See* doc. 360 at 11-17.)

[12] Plaintiff's claim for attorneys' fees against Bespoke also fails as a matter of law because § 38.001 only applies to corporations and not to limited liability companies such as Bespoke. *See Hoffman v. L & M Arts*, 3:10–CV–0953–D 2015 WL 1000838 at *5 (N.D. Tex. Mar. 6, 2015) (finding attorneys' fees not recoverable against LLC under Section 38.001 because the term "corporation" does not include LLC), *affirmed by*, 838 F.3d 568, 586 (5th Cir. 2016); *see also Greco v. Nat'l Football League*, 116 F. Supp. 3d 744, 750 (N.D. Tex. 2015) (finding attorneys' fees not recoverable against an unincorporated association under § 38.001).

and breach of the implied covenant of good faith and fair dealing because they are duplicative of its breach of contract claim. (doc. 333 at 28-29.) Plaintiff "does not oppose [Defendants' arguments on dismissal of these claims], given that [it] has a breach of contract claim, and promissory estoppel and breach of the implied covenant were pleaded in the alternative." (doc. 363 at 26.)[13] Accordingly, Defendants have satisfied their summary judgment burden, and their motion for summary judgment on these two claims should be granted.

## V. INTENTIONAL INTERFERENCE WITH CONTRACTUAL OBLIGATIONS[14]

Defendants[15] seek summary judgment on Plaintiff's claim of intentional interference with contractual obligations, alleging that Plaintiff failed to provide evidence of an existing contract. (doc. 333 at 30.)

A plaintiff alleging interference with an existing contract must prove the following elements: (1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss. *See Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

Defendants argue that no evidence has been produced to support Plaintiff's allegations as to the existence of a contract subject to interference. (doc. 333 at 30.) The second amended

---

[13] *See* Tex. Bus. & Com. Code § 1.304 cmt.1 ("This section [on the duty of good faith and fair dealing] does not support an independent cause of action for failure to perform or enforce in good faith" and it "merely directs a court towards interpreting contracts within the commercial context in which they are created, performed, and enforced, and does not create a separate duty of fairness and reasonableness which can be independently breached"); *see Doctors Hosp. 1997, L.P. v. Sambuca Houston, L.P.*, 154 S.W.3d 634, 636-37 (Tex. App.–Houston [14th Dist.] 2004, pet. abated) (explaining that promissory estoppel under Texas law is not applicable where there is a legally valid contract between the parties).

[14] Though Plaintiff identifies this claim as "intentional interference with contractual obligations," it appears to be asserting the claim of tortious interference with an existing contract and identifies this claim as such in its response to Defendants' motion for summary judgment. (*See* docs. 36 at 14-15, 363 at 24.)

[15] Plaintiff did not move for summary judgment on this claim. (*See* doc. 360.)

complaint alleges that Defendants were aware of a contract between Prosper and Ask Re regarding the forwarding shipment of the dried peas and that Divyesh made "materially false representations" that were "intended to prevent Prosper from performing on its contract with Ask Re." (doc. 36 at 14-15.) It also alleges that those misrepresentations proximately caused Prosper's "monetary damages in an amount of at least $31,000.00, given that they had to cover their requirements elsewhere at the price of $725.00 per metric ton." (*Id*.) Defendants cite to discovery responses from Prosper and Plaintiff stating that they do not have any documentation showing payment or shipment between Prosper and Ask Re. (doc. 333 at 24-25, 30.) They also point to the lack of "any evidence demonstrating the basic terms of the agreement" between Prosper and Ask Re, such as information on the contract price or date of performance. (*Id*. at 30.) Defendants have met their burden to show a complete failure of proof in the record on an essential element of Plaintiff's tortious interference claim.

The burden now shifts to Plaintiff to show a genuine issue of fact as to the existence of the contract between Prosper and Ask Re. Plaintiff only points to an e-mail stream between Bespoke and Prosper representatives in which the Bespoke representative stated that it was aware of the "tri-party arrangement" with "two parties involved at [Prosper's] end" and Hitesh responding that the "buyer is Askre ltd, Hong Kong." (doc. 363 at 25.) Even when viewed in the light most favorable to Plaintiff as the non-movant, this e-mail stream about a "tri-party arrangement" is not sufficient summary judgment evidence to show a genuine issue of material fact as to the existence of an actual, existing contract between Prosper and Ask Re. *See Fisher v. Blue Cross & Blue Shield of Texas, Inc*., No. 3:10-CV-2652-L, 2015 WL 5603711, at *8 (N.D. Tex. Sept. 23, 2015) (dismissing claim of tortious interference with existing contract on summary judgment when the plaintiff failed to "cite to any evidence of an actual, existing contract"). Plaintiff fails to point to any documentation about

the actual existence of the contract between Prosper and Ask Re. *See Tex. Mfr. Hous. Ass'n, Inc. v. City of Nederland*, 101 F.3d 1095, 1099 (5th Cir. 1996) (explaining that, after the moving party has met its burden on summary judgment, the non-movant has to demonstrate "significant probative evidence" that there is an issue of material fact warranting a trial); *see also Lykos v. Welling*, No. 3:94-CV-2019-R, 1997 WL 135669, at *7 (N.D. Tex. Mar. 12, 1997) (explaining that a cause of action for tortious interference with an existing contract cannot succeed in the absence of evidence of a contract).

Because Plaintiff has failed to sustain its summary judgment burden to show evidence of an existing contract subject to interference, Defendants' motion for summary judgment should be granted on this claim.

## VI. COMMON LAW FRAUD

Defendants and Plaintiff both seek summary judgment on Plaintiff's claim of common law fraud. (docs. 333 at 31, 360 at 22-25.) The claim is based upon Divyesh's alleged oral statements (1) "before entering into the contract" about Defendants' inventory; and (2) after entering into the contract regarding the shipping delays. (doc. 36 at 12-13.) Plaintiff contends that there "is no reasonable dispute that the Defendants committed fraud." (doc. 360 at 22.) Defendants argue that they are entitled to summary judgment because the fraud claim is duplicative of Plaintiff's breach of contract claim.[16] (doc. 333 at 31.)

### A.     Pre-contract Representations

The second amended complaint alleges that Divyesh, "before entering into the contract,

---

[16] In Defendants' reply, they raise a new ground for dismissal of Plaintiff's fraud claim by arguing that there is no evidence of damages. (doc. 370 at 23.) Because this evidentiary basis was raised for the first time in their reply, Defendants' new argument will not be considered. *See Springs Indus., Inc. v. Am. Motorists Ins. Co.*, 137 F.R.D. 238, 239 (N.D. Tex. 1991).

made a materially false representation that the Defendants had an inventory [of dried green peas],"

knowing that "Prosper would not have entered into the contract . . . if the representation was false."

(doc. 36 at 12-13.) It further alleges that Divyesh made this statement "without any intention of

shipping the goods" and that Prosper relied upon this statement. (*Id*. at 13.)

### 1. *Defendants' Motion*

Defendants contend that as a matter of law, Plaintiff's claim of fraud on the pre-contract

representations has been improperly asserted as a tort claim because it is duplicative of its breach

of contract claim and is based upon a breach of a duty imposed by the underlying contract. (doc.

333 at 31.)

A "fraud claim is duplicative of a breach of contract claim '[i]f the defendant's conduct

would give rise to liability only because it breaches the parties' agreement.'" *Gay v. City of Wichita

Falls*, 457 S.W.3d 499, 509 (Tex. App.–El Paso 2014, no pet.) (citations omitted). When

"determining whether a tort claim is merely a repackaged breach of contract claim, a court must

consider: (1) whether the claim is for breach of duty created by contract, as opposed to a duty

imposed by law; and (2) whether the injury is only the economic loss to the subject of the contract

itself." *Stanley Indus. of S. Fla. v. J.C. Penney Co., Inc*., No. 3:05–CV–2499–L, 2006 WL 2432309,

at *5 (N.D. Tex. Aug. 18, 2006) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs and

Contractors, Inc*., 960 S.W.2d 41, 45–47 (Tex. 1998)). While the burden is on the plaintiff to

establish evidence of an independent injury, the Texas Supreme Court has stated that fraudulent

inducement[17] claims are not subject to the economic loss rule. *See Formosa Plastics Corp. USA*, 960

S.W.2d at 47 ("[T]ort damages are recoverable for a fraudulent inducement claim irrespective of

---

[17] A fraudulent inducement claim "shares the same elements [as common law fraud] but involves a promise of future performance made with no intention of performing at the time it was made." *Ibe v. Jones*, 836 F.3d 516, 525 (5th Cir. 2016) (citing *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015)).

whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract."); *see also Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 764-65 (N.D. Tex. 2012) (collecting cases noting that a lack of an independent injury or the economic loss rule does not bar fraud claims in general).

Here, Divyesh's alleged misrepresentation on the inventory of dried green peas was made before the existence of the contract and was used to negotiate and induce a binding agreement between the parties. (doc. 36 at 12-13.) At that time, Divyesh had a legal duty, which was "separate and independent from the duties established by the contract itself," not to "fraudulently procure [a] contract" with misrepresentations. *Ibe v. Jones*, 836 F.3d 516, 526 (5th Cir. 2016); *see also Formosa Plastics Corp. USA*, 960 S.W.2d at 47 (noting the existence of "an independent legal duty, separate from the existence of the contract itself, [that] precludes the use of fraud to induce a binding agreement"). Though Plaintiff alleges only economic loss as its injury, tort damages are still recoverable upon these types of allegations. *See Formosa Plastics Corp. USA*, 960 S.W.2d at 47; *see also Hurd*, 880 F. Supp. 2d at 764-65. Plaintiff properly alleges a claim of fraud against Divyesh, individually and as a representative of Bespoke, for the alleged material misrepresentations made to Hitesh before the contract was executed where "any damages suffered as a result of the fraud sound in tort." *See Formosa Plastics Corp. USA*, 960 S.W.2d at 47. Defendants fail to show that Plaintiff's fraud claim based upon Divyesh's statements made before entering into the contract is duplicative of its breach of contract claim. Defendants' motion for summary judgment should therefore be denied as to Plaintiff's fraud claim based upon the pre-contract representations on dried green pea inventory.

## 2.    *Plaintiff's Motion*

Plaintiff seeks summary judgment on its fraud claim on grounds "there is no reasonable

dispute that the Defendants committed fraud." (doc. 360 at 22.)

Under Texas law, a fraud claim requires the following elements: (1) a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made the statement recklessly without any knowledge of the truth; (4) the speaker made the representation with the intent that the other party should act on it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *See Formosa Plastics Corp. USA v. Presidio Eng's & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998).

To meet its summary judgment burden, Plaintiff provides an affidavit from Hitesh that explains how Divyesh represented during the contractual negotiations that he had at least 180 metric tons of dried green peas in his company's warehouse available for shipment. (doc. 361 at 372.) It also states that Hitesh relied upon Divyesh's representations when it entered into the contract on behalf of Prosper and that he would not have entered into the contract if Divyesh did not assure him that he had a sufficient inventory. (*Id*. at 371-72.) The affidavit further states how Divyesh later told Hitesh that "he had attempted to procure the goods . . . and was unable to do so." (*Id*. at 372-73.) Plaintiff provided excerpts from Divyesh's deposition where he states that he did not "remember [his] side" of the conversation with Hitesh or most of his representations regarding Bespoke's inventory of dried green peas. (docs. 363 at 18, 364 at 512.) Plaintiff, however, fails to point to evidence showing that Divyesh knew his statement about the dried green pea inventory was false at the time he made it, that he made it with the intent that Hitesh/Prosper act upon it, or that Prosper suffered injury based upon its reliance.[18] Accordingly, Plaintiff has failed to meet its burden to show

---

[18] In its summary judgment motion and reply, Plaintiff seeks leave to amend and "submit a statement of damages" on its fraud claim. (docs. 360 at 25, 375 at 11.) Its request does not comply with the local civil rules for the Northern District of Texas, so its non-compliant motion is denied without prejudice to filing a motion that complies with the applicable rules of civil procedure and the local rules. *See Shabazz*, 380 F. Supp. 2d at 798.

the existence of no genuine issue of material fact as to its remaining fraud claim. *See Formosa Plastics Corp. USA.*, 960 S.W.2d at 48 (explaining that a party "must present evidence that [the defendant] made representations with the intent to deceive and with no intention of performing as represented . . . [and that] the evidence presented must be relevant to [the defendant's] intent at the time the representation was made").

Plaintiff's motion for summary judgment on its claim of fraud based upon the pre-contract representations on dried green pea inventory should be denied.

**B.    <u>Post-Contract Representations</u>**

Plaintiff further alleges in its second amended complaint that Defendants made misrepresentations about their "capability of shipping the [dried green peas]" in e-mail messages detailing the shipping delays due to bad weather and low availability of rail car transportation. (doc. 36 at 13.) These statements were all made after the execution of the contract and occurred during the delivery period of performance under the contract. (*Id.*)

Defendants again argue in their motion for summary judgment that as a matter of law, Plaintiff's claim of fraud on these representations has been improperly asserted as a tort claim because it is duplicative of its breach of contract claim. (doc. 333 at 31.) These alleged misrepresentations, unlike Divyesh's statements made pre-contract, give rise to liability solely because of the contractual relationship between the parties and not by operation of law. *See Gay v. City of Wichita Falls*, 457 S.W.3d 499, 509 (Tex. App.–El Paso 2014, no pet.) (A "fraud claim is duplicative of a breach of contract claim '[i]f the defendant's conduct would give rise to liability only because it breaches the parties' agreement.'"). Defendants did not have an independent legal duty here that would impose liability for their breach on their promise to deliver the goods. *See Frost Nat'l Bank v. Heafner*, 12 S.W.3d 104, 112 (Tex. App.–Houston [1st Dist.] 1999, pet. denied)

("[T]he mere failure to perform a contract is not evidence of fraud."). Though Defendant attempts to present these alleged misrepresentations as a fraud claim, Plaintiff is improperly re-characterizing its breach of contract claim on Defendants' failure to deliver as a tort claim. Defendants' motion for summary judgment should be granted[19] as to Plaintiff's fraud claim based upon representations on shipping delays.[20]

## VII. NEGLIGENT MISREPRESENTATION

Defendants[21] also seek summary judgment on the claim of negligent misrepresentation because it is duplicative of Plaintiff's breach of contract claim. (doc. 333 at 32.)

Under Texas law, the elements of a negligent misrepresentation claim are: (1) the representation was made in the course of defendant's business, (2) false information was supplied for the guidance of others in their business, (3) the defendants did not exercise reasonable care or competence in obtaining or communicating the information, and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *See Gen. Elec. Capital Corp. v. Posey,* 415 F.3d 391, 396-97 (5th Cir. 2005). A negligent misrepresentation claim, however, cannot be based on a promise to act in the future, but must rather focus on misstatements of existing facts. *See Thawar v. 7-Eleven, Inc.*, 165 F. Supp. 3d 524, 533 (N.D. Tex. 2016).

---

[19] As Defendants have shown that Plaintiff may not assert a fraud claim based upon these allegations as a matter of law, Plaintiff's summary judgment arguments need not be considered, and its motion for summary judgment on its fraud claim based upon misrepresentations of shipping delays should be denied.

[20] Because Defendants seek summary judgment solely based on Plaintiff's ability to maintain this claim as a matter of law, whether Defendants have met their "no evidence" summary judgment burden under *Celotex* is irrelevant. *See Narvaez*, 757 F. Supp. 2d at 634 n.13.

[21] In the introduction of its motion for summary judgment, Plaintiff claims to seek summary judgment on its negligent misrepresentation claim, but it fails to provide any argument or evidence on it in either its brief or reply. (*See* docs. 360, 375.) It has therefore failed to sustain its summary judgment burden, and any motion on this claim should be denied.

As previously explained, when "determining whether a tort claim is merely a repackaged breach of contract claim, a court must consider: (1) whether the claim is for breach of duty created by contract, as opposed to a duty imposed by law; and (2) whether the injury is only the economic loss to the subject of the contract itself." *Stanley Indus. of S. Fla.*, 2006 WL 2432309 at *5 (N.D. Tex. Aug. 18, 2006) (citations omitted). To assert a negligent misrepresentation claim as a matter of law, a party must show an injury independent from the economic loss or subject matter of the contract. *See D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663-64 (Tex. 1998) (noting how the "rejection of the independent injury requirement in fraudulent inducement claims does not extend to claims for negligent misrepresentation or negligent inducement" and how there is a "narrower scope of liability for negligent representation").

Here, the injuries asserted by Plaintiff in its negligent misrepresentation claim are only for the economic loss associated with the subject matter of the contract for dried green peas. (*See* doc. 36 at 16.) It contends that Divyesh's alleged misrepresentations about Defendants' "possession of the contracted goods" and delivery delays resulted in Prosper being "forced to purchase replacement goods from a local seller, incurring additional expenses in the amount of at least $31,140.00" as "pecuniary damages." (*Id*. at 15-16.) This injury is not independent from Plaintiff's alleged injury under its breach of contract claim and is based upon the damages that it would have received under its contract claim. *See Narvaez*, 757 F. Supp. 2d at 634 (dismissing a negligent misrepresentation claim because the alleged injury was "only for economic loss to the subject matter of [the plaintiff's] contract" with the defendant). Accordingly, Defendants have shown that Plaintiff's negligent misrepresentation claim is precluded as a matter of law because it is duplicative of its breach of contract claim. Defendants' motion for summary judgment on Plaintiff's negligent misrepresentation

claim should be granted.[22]

## VIII. RECOMMENDATION

Plaintiff's motion for partial summary judgment should be **DENIED**. Defendants' motion for summary judgment should be **GRANTED** on Plaintiff's claims for breach of contract, attorneys' fees under Tex. Civ. Prac. & Rem. Code § 38.001, breach of the implied covenant of good faith and fair dealing, promissory estoppel, interference with contractual obligations, negligent misrepresentation, and common law fraud based upon Defendants' misrepresentations on shipping delays. Defendants' motion for summary judgment should be **DENIED** on Plaintiff's claim for common law fraud based upon Defendants' pre-contract representations about dried green pea inventory, and it should remain pending for trial.

**SO RECOMMENDED** on this 23rd day of August 2017.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[22] As with Plaintiff's fraud claims, Defendants' argument here is solely based on Plaintiff's ability to maintain this claim as a matter of law, and not on the absence of evidence or negation of an element of Plaintiff's claim, so consideration of whether Defendants have met their summary judgment burden under *Celotex* is unnecessary.

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE