IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HOSTINGXTREME VENTURES, LLC and DOES 1 through 10 inclusive, Plaintiffs, | § § § § | |
| v. | § § | Civil Action No. 3:14-CV-1471-M |
| BESPOKE GROUP, LLC, DIVYESH PATEL, and HINA PATEL, and DOES 1 through 10 inclusive, Defendants. | § § § § | Referred to U.S. Magistrate Judge |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the order dated November 3, 2015, this case has been referred for full case management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions. Before the Court for recommendation is *Defendants' Motion for Sanctions and Brief in Support*, filed March 7, 2017 (doc. 336). Based on the relevant filings, evidence, and applicable law, the defendants' motion should be **DENIED.**

## I. BACKGROUND

This suit arises out of a contract between Bespoke Group, LLC (Bespoke) and Prosper Trade Company (Prosper) for the purchase and delivery of 180 metric tons of bulk "US origin dry green peas" at the price of $552.00 per ton to be delivered by Bespoke from the United States to Prosper in Nhava Sheva, India. (doc. 36 at 4-5.)[1]

Before the contract was executed, Divyesh Patel (Divyesh), the owner and manager of Bespoke, met with Hitesh Sayta (Hitesh), an individual who "held a mandate on behalf [of Prosper]" to buy dried green peas. (*Id.* at 4.) According to Hitesh, Divyesh represented that he had an

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

"adequate inventory" of dried green peas that "he could ship subsequent to entering into the purported contract." (*Id*. at 4-5.) They negotiated the details of the contract and "agreed that a formal written contract would be drawn up by [Divyesh] and sent out via email to Hitesh." (*Id*. at 5.) Though not identified in the written contract, Prosper intended to sell these peas directly to Ask Re Ltd. (Ask Re) in Hong Kong upon receipt. (*Id*. at 11.) Prosper was later notified via e-mail that Bespoke was experiencing difficulties in shipping the peas due to a lack of rail car transportation caused by bad weather. (*Id*. at 5.) Bespoke failed to deliver the peas as required by the contract, and Prosper "had to cover its onward contractual obligations [to Ask Re] . . . [by] purchas[ing] goods from another seller" at an increased price. (*Id*. at 9.)

Prosper subsequently assigned its rights under the contract to HostingXtreme Ventures, LLC (Plaintiff), which then sued Bespoke, Divyesh, and his wife, Hina Patel (Hina) (collectively Defendants) on April 22, 2014, alleging breach of written contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, common law fraud, intentional interference with contractual rights, and negligent representation. (*See* doc. 1.) Plaintiff amended its complaint on February 2, 2015 (doc. 25), and again on July 28, 2015 (doc. 36), but alleging the same claims.[2] Due to numerous discovery disputes, the discovery period lasted for over two years. (*See* docs. 287, 384.)

On January 27, 2017, Defendants served a copy of their motion for sanctions on Plaintiff and requested that it voluntarily dismiss Hina due to the lack of evidence connecting her to this suit. (doc. 336 at 28.) On March 7, 2017, Defendants filed this motion after Plaintiff refused to voluntarily dismiss Hina, seeking sanctions in the form of dismissal of all of Plaintiff's claims with prejudice and attorneys' fees and expenses. (*See id.*) On March 15, 2017, Plaintiff filed an

---

[2] Plaintiff named "Does 1 through 10 inclusive" as its co-plaintiffs and named "Does 1 through 10 inclusive" as defendants. (doc. 36 at 1.) None of the "Does" is identified in Plaintiff's second amended complaint. (*See id.*)

"unopposed" motion to dismiss Hina with prejudice under Rule 41. (doc. 342.) After it was ordered that Hina be dismissed from this suit, Defendants filed a motion for reconsideration arguing that they did not actually stipulate to Hina's dismissal under Rule 41 because of this pending motion for sanctions. (doc. 349.) On July 14, 2017, Defendants' motion for reconsideration was granted, and an amended order of dismissal was entered. (doc. 378.) On September 11, 2017, all of Plaintiff's claims against Divyesh and Bespoke were dismissed on summary judgment, except for its claim of common law fraud based upon Divyesh's representations during the contract negotiations. (docs. 384, 391.)

With a timely filed response (doc. 362) and reply (doc. 366), Defendants' motion for sanctions is ripe for recommendation.

## II. MOTION FOR SANCTIONS

Defendants move for sanctions against Plaintiff and its counsel under both Rule 11 of the Federal Rules of Civil Procedure and the Court's inherent power. (doc. 336.)

**A.** **Rule 11**

Defendants argue that sanctions under Rule 11 are warranted because Plaintiff pursued a "baseless" fraud claim against Hina and "fabricated damages" in its claims against Divyesh and Bespoke. (*Id*. at 18-20, 25-27.)

Rule 11(b) provides that by presenting a filing to a court, attorneys are certifying that to the best of their belief, after reasonable inquiry, (1) the filing is not being presented for an improper purpose, such as harassment, delay, or increasing costs; (2) any claims and/or defenses in the filing are supported by either existing law or by a nonfrivolous argument for changing existing law or establishing new law; and (3) factual contentions have or will likely have evidentiary support. Fed. R. Civ. P. 11(b). The purpose of the rule is to "deter baseless filings in district court," *Cooter & Gell*

3

*v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990), and "to spare innocent parties and overburdened courts from the filing of frivolous lawsuits," *Zuffante v. Stephens*, No. 3:13-CV-1146-B, 2013 WL 4829193, at *1 (N.D. Tex. Sept. 9, 2013) (quoting *Kurkowski v. Volcker*, 819 F.2d 201, 204 (8th Cir. 1987)).

After notice and opportunity to respond, courts finding a Rule 11(b) violation may impose appropriate sanctions. Fed. R. Civ. P. 11(c)(1). These may include monetary and injunctive sanctions, *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359-60 (5th Cir. 1986), and even dismissal, *Bell v. Dunn, Johnston & Brown*, No. 3:10-CV-1-M-BH, 2011 WL 759473, at *3 (N.D. Tex. Feb. 7, 2011), *adopted by* 2011 WL 726114 (N.D. Tex. Mar. 1, 2011). Courts have a duty to "impose the least severe sanction adequate" to deter future conduct. *Mendoza v. Lynaugh*, 989 F.2d 191, 196 (5th Cir. 1993) (quoting *Akin v. Q–L Invs., Inc.*, 959 F.2d 521, 535 (5th Cir. 1992)); *accord* Fed. R. Civ. P. 11(c)(4). The moving party has the burden to overcome the presumption that pleadings are filed in good faith. *Tompkins v. Cyr*, 202 F.3d 770, 788 (5th Cir. 2000).

Rule 11(c)(2) provides that a motion must be made separately from any other motion and must describe the specific sanctionable conduct. Fed. R. Civ. P. 11(c)(2). The rule contains a safe harbor provision that requires that the motion "be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." *Id.* This requirement is strictly construed and substantial compliance is insufficient. *Morris v. Thaler*, No. 3:12-CV-4916-N, 2013 WL 2383652, at *2 (N.D. Tex. May 31, 2013) (citing *In re Pratt*, 524 F.3d 580, 586-88 (5th Cir. 2008) (addressing "substantially identical" bankruptcy Rule 9011)). Informal notice and opportunity to withdraw is not an adequate substitute for serving a copy of the motion at least twenty-one days before filing the motion with the court. *Pratt*, 524 F.3d at 586-88 (noting

4

courts "have continually held that strict compliance with Rule 11 is mandatory"). The movant has the burden to show compliance with the safe harbor provision. *See id.*; *see also Elliott v. Tilton*, 64 F.3d 213, 216 (5th Cir. 1995).

   1.   ***Fraud Claim Against Hina***

Defendants first contend that sanctions are warranted because Plaintiff pursued a "frivolous" fraud claim against Hina, which it failed to dismiss voluntarily within the 21-day safe harbor period.[3] (doc. 336 at 15-19.)

On July 28, 2015, Plaintiff filed its second amended complaint that alleged a breach of contract claim and several tort claims, including a "common law civil fraud" claim against Divyesh, Hina, and Bespoke. (doc. 36 at 12.) This fraud claim was based upon: (1) Divyesh's oral statements to Prosper's representatives during contract negotiations regarding Bespoke's inventory of dried green peas; and (2) e-mail messages from Divyesh and Bespoke sent to Prosper after execution of the contract detailing Bespoke's problems performing under the contract due to the shipping delays, bad weather, and the low availability of rail car transportation. (*Id.* at 12-13.)

Defendants contend that Plaintiff "needlessly included [Hina] as a defendant to further harass [Hina and Divyesh]" and "conducted no inquiry into the basis of the [fraud] claim against Hina." (doc. 336 at 19.) They point to the second amended complaint and Plaintiff's discovery responses to show that Plaintiff could not identify any specific representations made by Hina to support a fraud claim, and they also point to the deposition transcripts of Prosper's representative to show that Prosper was also not aware of any communication that could be attributed to Hina individually. (*Id.* at 16-18.) They further argue that sanctions are warranted because Plaintiff withdrew its fraud claim

---

[3] Defendants formally served a copy of their motion for sanctions on Plaintiff's counsel on January 27, 2017, and later filed a substantially identical copy of their motion on March 7, 2017. (*See* doc. 336.) They have met their burden to show compliance with the safe harbor provision under Rule 11.

5

against Hina outside of the 21-day safe harbor period. (*Id*. at 19.)

Plaintiff responds that it had a good faith basis to allege a fraud claim against Hina because she is the majority shareholder and one of only two members[4] of Bespoke. (doc. 352 at 13.) It argues that because its fraud claim was partly based on e-mail communications from Bespoke's e-mail addresses, it was not unreasonable to name Hina as a defendant because she would have had the authority to send e-mails and other communications on behalf of Bespoke and Divyesh. (*Id*. at 6, 9-10, 13.) It also points out that it consulted the records of the Texas Comptroller and Secretary of State and found that the address of Bespoke's registered agent is listed at the same address as the residence owned by Hina and Divyesh. (*Id*. at 9-10.) Based upon this evidence, Plaintiff's choice to pursue a claim of fraud against Hina appears to have been formed after a reasonable inquiry into the factual contentions and existing law, and it was not presented for an improper purpose. *See Bell*, 2011 WL 759473, at *4-5 (denying sanctions based on argument that the plaintiff's FDCPA claim was frivolous because plaintiff's counsel "knew or should have known that [the defendant] was not a 'debt collector' liable under the FDCPA prior to filing this suit [or] should have gained that knowledge during the course of this litigation" where the plaintiff's counsel pointed to evidence that it was not unreasonable to allege that the defendant qualified as a debt collector).

Plaintiff further responds that its decision to voluntarily dismiss Hina outside of the 21-day safe harbor period was reasonable and made in good faith because the safe harbor deadline expired before it had Hina's final updated discovery responses and deposition transcripts/errata sheets. (doc. 352 at 13.) Because Defendants served their motion for sanctions on January 27, 2017, the safe harbor deadline expired before Hina's amended written discovery responses were due on February

---

[4] The only other member of Bespoke is Divyesh. (doc. 352 at 9.)

27, 2017, and also before her deposition transcript and errata sheets were submitted to Plaintiff's counsel. (*Id*. at 10-11.) Plaintiff further alleges that Hina had "been very evasive in discovery," and points to how she refused to produce any electronically stored information from her Bespoke e-mail or computer and failed to attend her previously scheduled depositions until ordered to do so by this Court. (*Id*. at 8-9.) After it reviewed all discovery in Hina's possession and her deposition transcripts, Plaintiff indicated its intent to dismiss its fraud claim against Hina, and she is now fully dismissed from this suit. (*See* doc. 378.) Though Defendants reply that the additional discovery did not identify any new information regarding the fraud claim against Hina (doc. 366 at 6-7), it was not unreasonable for Plaintiff to wait until it had her complete discovery responses and deposition transcript/errata sheets before voluntarily dismissing her, even though it fell outside the 21-day safe harbor deadline. *See Sortium USA, LLC v. Hunger*, No. 3:11-CV-1656-M, 2014 WL 1080765, at *6 (N.D. Tex. Mar. 18, 2014) (explaining that "a claim that has 'some plausible basis, [even] a weak one,' is sufficient to avoid sanctions under Rule 11") (citing *United Nat. Ins. Co. v. R & D Latex Corp.*, 242 F.3d 1102, 1117 (9th Cir. 2001)).

Defendants' motion for sanctions under Rule 11 based in the fraud claim against Hina should be denied.[5]

### 2. *Fabricated Evidence*

Defendants next argue that sanctions are warranted because Plaintiff relied upon "fabricated" evidence as the basis for its claims and alleged damages. (doc. 336 at 20-26.)

---

[5] In its response, Plaintiff also argues that the motion for sanctions against Hina is "superfluous" because she was voluntarily dismissed under Rule 41(a)(1). The "Fifth Circuit has found that the collateral jurisdiction doctrine permits courts to sanction attorneys under Rule 11 even after a final judgment on the underlying merits has been entered," and that "even a stipulation of dismissal or entry of judgment would not deprive [a court] of jurisdiction to consider [a] pending sanctions motion." (doc. 348 at 4); *see also Bechuck v. Home Depot U.S.A., Inc.*, 814 F.3d 287, 291-92 (5th Cir. 2016) (citing *Cooter & Gel.*, 496 U.S. at 395 (finding that voluntary dismissal under Rule 41(a)(1)(i) does not deprive a district court of jurisdiction over a Rule 11 motion)).

In its second amended complaint, Plaintiff alleges that the basis for damages on most of its claims are due to the fact that "Prosper Trade had to cover its onward contractual obligations, and it had to purchase goods from another seller" at an increased price of $725.00 per metric ton resulting in damages "in an amount not less than $31,140.00" plus expenses for "transportation costs, warehousing costs, insurance expenses, commission and brokerage, [and] sales tax." (doc. 36 at 9.) In its interrogatory responses, Plaintiff further identified cover damages in the amount of $58,140.00 broken down as: $31,140.00 in damages for replacement peas (due to an increase of $173.00[6] per metric ton multiplied by 180 tons); $15,000.00 as damages for incidental and consequential damages; and $12,000.00 in damages for Prosper's "idle labor costs." (doc. 336 at 20.) In response to requests for production, Plaintiff produced only five invoices from various vendors in India to support its alleged "cover damages" incurred from the purchase of replacement peas. (*Id*. at 10.)

Defendants contend that the five invoices are fake, and that Plaintiff "fraudulently present[ed] the Court with fabricated invoices in an attempt to support its damages." (*Id*. at 25-26.) They present a declaration from one of the companies identified in the invoices stating that its invoice was forged, as well as the affidavit of Kiran Trivedi (Trivedi), a licensed attorney in India, who "conducted an investigation" into the legitimacy of the invoices and concluded that they were all fraudulent. (docs. 336 at 28, 337 at 40-46.) Defendants further argue that there is a "total absence of any other documentation from Plaintiff to support its claim that it purchased and shipped peas from an alternate source," and points to the deposition transcript from Prosper's corporate representative in which he stated that those five invoices were "all [of the] relevant documents in

---

[6] This amount is calculated by subtracting the contract price of $552.00 per metric ton from the $725.00 per metric ton cost of the replacement peas. (*See* doc. 36.)

its possession" to support the claim that it had to purchase replacement peas. (doc. 336 at 20-25.)

Plaintiff denies that it fabricated the five invoices and alleges that it received them directly from Prosper. (doc. 352 at 14-15.) It argues that it was not objectively unreasonable for it to rely upon these invoices and to produce them during discovery because there was "no reason to believe that [Prosper] fabricated any documents," and because Prosper's representative stated that they were true and correct both to Plaintiff's counsel when this suit was filed and to Defendants' counsel during his deposition. (*Id*. at 15.) Plaintiff also provides confirmation from one of the identified companies that its specific invoice was not fabricated, as well as a transcript of a recording from a meeting between Plaintiff's counsel and Trivedi, in which Trivedi allegedly stated that he was unable to confirm that "at least two" of the invoices were fabricated. (*Id*. at 17-19.)

Even assuming, without deciding, that all five of the invoices were fabricated, Defendants still do not show that Plaintiff failed to make a reasonable inquiry or pursued frivolous claims based on cover damages.[7] During the pendency of this suit, Defendants have never alleged that they fully performed under the contract by timely delivering 180 tons of dried green peas to Prosper; they instead assert several affirmative defenses as to why they failed to perform and contest the extent of Plaintiff's damages due to the breach. (*See* docs. 47, 333, 336.) Under the facts of this suit, it was not unreasonable for Plaintiff to allege cover damages and rely upon Prosper's representations that it purchased replacement peas after Bespoke failed to deliver, particularly when Prosper was able to provide Plaintiff with seemingly authentic invoices as evidence of the purchase. *See Sortium USA*,

---

[7] Plaintiff objects to Trivedi's affidavit as hearsay and argues that Defendants' motion should be denied because their "disclosure of Trivedi and his investigation is grossly untimely." (doc. 352 at 16-20, 22-23.) In their reply, Defendants object to the transcript of the recording between Trivedi and Plaintiff's counsel on several bases, and they allege that Trivedi "vigorously denies that this conversation took place." (doc. 366 at 14.) These objections need not be considered because, regardless of the authenticity of the five invoices, the recommendation on whether Plaintiff or its counsel violated Rule 11 would remain the same.

2014 WL 1080765, at *6 ("At the very least, it is well settled that a claim that has 'some plausible basis, [even] a weak one,' is sufficient to avoid sanctions under Rule 11.") (citation omitted); see also *Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 444 (5th Cir. 1992) (explaining that "[t]o comply with his duties under rule 11, an attorney need not provide an absolute guarantee of the correctness of the legal theory advanced in the paper he files").

Defendants argue that the actions of Plaintiff and its counsel are "similar" to the factual situation in *Jimenez v. Madison Area Tech. Coll.*, 321 F.3d 652 (7th Cir. 2003). In *Jimenez*, the plaintiff was sanctioned under Rule 11 when evidence showed that she "falsified documents to bolster her discrimination claims." *Id.* at 656. Unlike in *Jimenez*, there is a lack of evidence in this suit that Plaintiff or its counsel fabricated the alleged fraudulent invoices.[8] Plaintiff, moreover, did not rely upon any of these five invoices in its summary judgment briefing after being notified that they were potentially fraudulent, and instead relied upon a new legal argument that its damages should be calculated by the fair market value. (*See* docs. 333, 360, 363.) Plaintiff's choice to forego presenting the five potentially fraudulent invoices as summary judgment evidence ultimately resulted in dismissal of its breach of contract claim because it "fail[ed] to provide any evidence of cover damages . . . [and did] not cite to any authority allowing evidence of the market price to be sufficient evidence of damages to preclude summary judgment when a plaintiff has solely pleaded cover damages." (docs. 384 at 9-10, 391.)

Plaintiff appears to have properly complied with Rule 11 as to its allegations of cover damages, and Defendants' motion for sanctions on this basis should be denied.

---

[8] While Defendants point out that Plaintiff's counsel showed Prosper's representative "notes" when asked about the amount of damages during his deposition, they do not explain how this is evidence that Plaintiff or its counsel fabricated the invoices to support its claims. (doc. 336 at 25-26.)

**B.     Inherent Power**

Defendants also generally ask for sanctions against Plaintiff under the Court's inherent power to sanction. (doc. 336 at 14-15.)

Courts possess the inherent power "to protect the efficient and orderly administration of justice and . . . to command respect for the court's orders, judgments, procedures, and authority." *In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993). Included in this inherent power is "the power to levy sanctions in response to abusive litigation practices." *Id*. Federal courts have the inherent, discretionary authority to dismiss an action upon a finding of bad faith or a willful abuse of the judicial process. *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1417 (5th Cir. 1995). However, "[t]he threshold for the use of the inherent power sanction is high." *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996). While courts "exercise caution" in invoking their inherent powers and should "ordinarily" rely on a rule or statute rather than their inherent power, they retain discretion to select the appropriate authority for sanctions. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991).

Bad faith conduct includes conduct that is motivated by improper purposes such as harassment or delay. *Coghlan v. Starkey*, 852 F.2d 806, 814 (5th Cir. 1988). In this respect, it "resembles" the requirements of Rule 11(b)(1). *Chambers*, 501 U.S. at 46 n.10. Courts can exercise their inherent power to assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1975), when the party practices a fraud upon the court, *Universal Oil Prod. Co. v. Root Ref. Co.*, 421 U.S. 240, 259 (1946), or when a party delays or disrupts the litigation or hampers a court order's enforcement, *Hutto v. Finney*, 437 U.S. 678, 689, n.14 (1978).

Here, Defendants do not distinguish their arguments as to why sanctions are warranted under

Rule 11 versus a court's inherent power to sanction, so it appears that they are reiterating the same arguments that have already been considered. (doc. 336.) As previously discussed, Defendants have not shown that Plaintiff should be assessed sanctions under Rule 11 for pursuing a fraud claim against Hina or for alleging "cover damages" and producing allegedly fake invoices during discovery. Defendants similarly fail to show that Plaintiff or its counsel acted in bad faith or in some other improper or prohibited way during this suit. *See Cappa Fund III, L.L.C. v. Actherm Holding, a.s.*, No. 3:10-CV-897-L, 2011 WL 817384, at *4 (N.D. Tex. Feb. 21, 2011), *adopted by* 2011 WL 816861 (N.D. Tex. Mar. 9, 2011) (denying motion for sanctions under a court's "inherent power" because the defendants failed to show that the plaintiff "acted in bad faith or for any other prohibited reason in bringing this suit simply because they did not voluntarily dismiss a suit that was later dismissed").

Defendants' contentions and allegations are insufficient to support a specific finding that Plaintiff or its counsel filed and pursued this case in bad faith as required for imposition of sanctions under the Court's inherent power. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980) (a specific finding as to whether counsel's conduct constituted or was tantamount to bad faith would have to precede any sanction under a court's inherent powers). Their request for sanctions under the Court's inherent authority should be denied.[9]

### III. RECOMMENDATION

Defendants' motion for sanctions should be **DENIED**.

---

[9] In a footnote in their reply, Defendants argue for the first time that they "seek appropriate sanctions pursuant to Rule 26(b) against Plaintiff and its counsel" for discovery abuses. (doc. 366 at 12 n.5.) They do not identify what sanctions would be "appropriate" in their reply, and they did not seek sanctions under Rule 26(b) or even identify Rule 26 in their initial motion. (*See* docs. 336, 366.) Even if this argument was considered, Defendants fail to show that sanctions are warranted under Rule 26. *See Springs Indus., Inc. v. Am. Motorists Ins. Co.*, 137 F.R.D. 238, 239 (N.D. Tex. 1991) (noting that a "nonmovant should be given a fair opportunity to respond to a motion" and a court should decline "to consider arguments raised for the first time in a reply brief").

**SO RECOMMENDED** on this 13th day of November 2017.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE