IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HOSTINGXTREME VENTURES, LLC and DOES 1 through 10 inclusive, Plaintiffs, | § § § § | |
| v. | § § | Civil Action No. 3:14-CV-1471-M |
| BESPOKE GROUP, LLC, DIVYESH PATEL, and HINA PATEL, and DOES 1 through 10 inclusive, Defendants. | § § § § | Referred to U.S. Magistrate Judge |

**MEMORANDUM OPINION AND ORDER**

Pursuant to the order dated November 3, 2015, this case has been referred for full case management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions. Before the Court is *Plaintiffs Motion for Leave to Amend the Complaint*, filed September 11, 2017 (doc. 388). Based upon the relevant filings, evidence, and applicable law, plaintiff's motion is **DENIED**.

**I. BACKGROUND**

This suit arises out of a contract between Bespoke Group, LLC (Bespoke) and Prosper Trade Company (Prosper) for the purchase and delivery of 180 metric tons of bulk "US origin dry green peas" at the price of $552.00 per ton to be delivered by Bespoke from the United States to Prosper in Nhava Sheva, India. (doc. 36 at 4-5.)[1]

Before the contract was executed, Divyesh Patel (Divyesh), the owner and manager of Bespoke, met with Hitesh Sayta (Hitesh), an individual who "held a mandate on behalf [of Prosper]" to buy dried green peas. (*Id.* at 4.) According to Hitesh, Divyesh represented that he had an

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

"adequate inventory" of dried green peas that "he could ship subsequent to entering into the purported contract." (*Id*. at 4-5.) They negotiated the details of the contract and "agreed that a formal written contract would be drawn up by [Divyesh] and sent out via email to Hitesh." (*Id*. at 5.) Though not identified in the written contract, Prosper intended to sell these peas directly to Ask Re Ltd. (Ask Re) in Hong Kong upon receipt. (*Id*. at 11.) Prosper was later notified via e-mail that Bespoke was experiencing difficulties in shipping the peas due to a lack of rail car transportation caused by bad weather. (*Id*. at 5.) Bespoke failed to deliver the peas as required by the contract, and Prosper "had to cover its onward contractual obligations [to Ask Re] . . . [by] purchas[ing] goods from another seller" at an increased price. (*Id*. at 9.)

Prosper subsequently assigned its rights under the contract to HostingXtreme Ventures, LLC (Plaintiff), which then sued Bespoke, Divyesh, and his wife, Hina Patel (Hina) (collectively Defendants) on April 22, 2014, alleging breach of written contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, common law fraud, intentional interference with contractual rights, and negligent representation.[2] (*See* doc. 1.) The initial scheduling order set a discovery deadline of September 16, 2015, a deadline for amended pleadings of July 31, 2015, and a trial date of February 16, 2016. (doc. 33.) Plaintiff filed its first amended complaint on February 2, 2015 (doc. 25), and its second amended complaint on July 28, 2015 (doc. 36) that included additional facts but alleged the same claims.

The discovery disputes became so contentious in this suit that a discovery motion protocol was established on November 4, 2015, that set requirements on scheduling depositions and filing additional discovery motions. (doc. 102.) Despite the discovery protocol, the parties filed over

---

[2] Plaintiff later voluntarily dismissed Hina from all claims in this suit with prejudice. (docs. 342, 378.)

thirty contested discovery motions.[3] (*See, e.g.*, docs. 37, 61, 72, 75, 78, 81, 91, 93, 94, 98, 99, 101, 121, 135, 152, 171, 187, 188, 194, 201, 215, 220, 236, 249, 250, 263, 265, 272, 274, 276.) This includes twelve motions for sanctions (docs. 81, 98, 99, 119, 121, 135, 187, 188, 272, 274, 285, 336), and nine motions to compel (docs. 37, 61, 75, 91, 187, 188, 194, 276, 290). Because of these many disputes, the initial scheduling order was vacated, and an amended scheduling order was issued that extended the discovery deadline until October 14, 2016; the deadline to amend pleadings and join parties was extended until July 15, 2016. (doc. 146.) On August 15, 2016, the remaining deadlines in the amended scheduling order were extended for an additional 90 days, which moved the discovery deadline to January 13, 2017. (doc. 174.)

The dates and other specifics related to the depositions were so frequently contested by the parties that Defendants' counsel was unable to depose Prosper's representative until December 29, 2016, and Plaintiff's counsel was unable to depose any of the Defendants until February 13, 2017. (doc. 315.) Because of this delay in the deposition dates, the deadline for filing dispositive and all other motions was extended from February 10, 2017, to March 15, 2017. (*Id.*) Plaintiff subsequently filed an unopposed motion to extend its deadlines under the scheduling order, which was granted in part, and Plaintiff's deadline to file a dispositive motion was extended until April 6, 2017. (doc. 355.)

On January 27, 2017, Defendants' counsel formally notified Plaintiff's counsel that they would be seeking sanctions unless Plaintiff fully dismissed this suit because they had evidence that all of the invoices and documents that Plaintiff produced during discovery related to its alleged damages were forged and fraudulent. (doc. 336 at 28.) Plaintiff denied the allegations and refused

---

[3] This discovery protocol was later vacated "because it [had] not prevented discovery disputes and [had] only provided an additional basis for disputes." (doc. 186.)

3

to dismiss. (doc. 352.)

Both sides timely moved for summary judgment. (docs. 332, 359.) Defendants argued that they were entitled to summary judgment on Plaintiff's breach of written contract claim because it failed to provide any competent evidence of the alleged "cover damages" incurred when Prosper had to buy replacement peas to cover its obligation to Ask Re after Bespoke failed to deliver. (docs. 332, 333.) Plaintiff similarly argued that it was entitled to summary judgment on its breach of contract claim, but it argued that judgment should instead be awarded under an oral contract theory against Divyesh individually because "the contract [at issue] was oral" and "was entered into prior to the written document being circulated." (doc. 360 at 9, 17.) Though Plaintiff previously identified this document as the "written contract" in its second amended complaint, it now identified this document as a "written memorandum [that] was circulated after the deal was orally done between Hitesh Sayta and Divyesh Patel." (*Id*. at 25.) Plaintiff, moreover, did not rely upon any of the invoices that Defendants alleged were forged as the basis for its "cover damages," and cited for the first time to Tex. Bus. & Com. Code § 2.713 arguing that it should instead be awarded damages based upon the increase in the fair market value of the peas, as established by an expert report from Mr. Darren Hudson (Hudson), and not the actual amount incurred by Prosper when it had to cover Defendants' breach.[4] (*Id*. at 19-22.)

On September 11, 2017, Defendants were granted summary judgment on all of Plaintiff's claims, except for its fraud claim based upon Divyesh's representations made before the contract was formed. (docs. 384, 391.) It was determined that Plaintiff's oral contract theory against Divyesh had "not been previously fairly pleaded" and would "not be considered for the first time on summary

---

[4] Plaintiff cited to Hudson's expert opinion that the market price of dried green peas at the relevant time and place was between $733.50 and $775.00 per ton, and it "submit[ted] that the midpoint of the range specified by Darren Hudson may be allowed" to compute the amount of damages. (doc. 360 at 21-22.)

4

judgment."[5] (doc. 384 at 5-6.) It was also determined as a matter of law that Plaintiff's damages on its breach of contract claim were limited to "the actual amount [Prosper] paid to cover and not the [difference in] market price" because "Prosper elected to cover at the time of the breach by purchasing similar goods" as identified in the second amended complaint. (*Id*. at 9-11.)

On the same day that Defendants were granted summary judgment on the breach of contract claim, Plaintiff filed this untimely motion for leave to amend its complaint "to more specifically include the language . . . to support market price damages and an oral contract" theory. (doc. 388 at 2.) With a timely filed response (doc. 393) and reply (doc. 397), Plaintiff's motion for leave to amend its complaint is ripe for determination.

## II. MOTION FOR LEAVE TO AMEND

Plaintiff moves for leave to amend its second amended complaint under Rules 16(b) and 15(a) of the Federal Rules of Civil Procedure. (doc. 388 at 2.)

**A.** **Rule 16(b)**

Federal Rule of Civil Procedure 16(b) governs the amendment of pleadings where, as in this case, the deadline in a scheduling order has expired. *Hawthorne Land Co. v. Occidental Chem. Corp.*, 431 F.3d 221, 227 (5th Cir. 2005); *S&W Enters., L.L.C. v. South Trust Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003). When leave to amend is sought after the deadline, the movant has the burden to show "good cause" to modify the scheduling order and amend its pleadings. *Sapp v. Mem'l Hermann Healthcare Sys.*, 406 F. App'x 866, 869 (5th Cir. 2010). The Fifth Circuit has identified four factors for a court to consider when determining whether the movant has shown

---

[5] In its summary judgment briefing, Plaintiff alternatively sought leave to amend its second amended complaint if its "effective complaint is lacking." (doc. 375 at 6.) This was denied as being untimely and for failing to comply with the local civil rules for the Northern District of Texas, which provide that when a party files a motion for leave to file an amended pleading, the party must attach the proposed amended pleading as an exhibit. (doc. 384 at 7 n.6.)

"good cause" in the context of an untimely motion to amend pleadings: (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) the potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice. *S&W Enters.*, 315 F.3d at 536. (citing *Reliance Ins. Co. v. La. Land & Exploration Co.*, 110 F.3d 253, 257 (5th Cir. 1997)).

1. *Explanation*

The first factor requires an explanation for the movant's failure to timely amend. *Id.* Courts have found sufficient explanation in cases involving developments in applicable law and when new facts become known through depositions and document production while the case is pending. *See Robles v. Archer W. Contractors, LLC*, No. 3:14-CV-1306-M, 2015 WL 4979020, at *3 (N.D. Tex. Aug. 19, 2015); *Settlement Capital Corp., Inc. v. Pagan*, 649 F. Supp. 2d 545, 566–67 (N.D. Tex. 2009). Courts have not found sufficient explanation when a scheduling mistake caused a missed deadline, a party misunderstand a statute, or a party did not understand the scheduling order. *See Regions Bank v. Law Offices of Sherin Thawer, P.C.*, No. 3:11–CV–1285–L, 2012 WL 1191850, at *6 (N.D. Tex. Apr. 10, 2012) (denying a motion to amend because Plaintiff could not identify a "reasonable explanation for the delay").

While Plaintiff continues to assert that its second amended complaint sufficiently alleges an oral contract theory and market price damages, it also argues that it was unable to timely seek leave to amend because Defendants' depositions were not scheduled until after the deadline to seek leave to amend, and it "would have been impossible . . . to have pled facts that it learn[ed] in the depositions." (doc. 388 at 6-7.) Plaintiff, however, does not identify exactly what "new information" or facts that it learned during the depositions, and it simultaneously argues that "the facts that the Plaintiff is seeking to add are not new." (*Id.* at 7-9.)

Though not cited to in its explanation, Plaintiff did attach to its motion a part of Divyesh's deposition transcript. (doc. 389 at 8-11.) In this section of the transcript, Divyesh answered questions from Plaintiff's counsel regarding specific terms under the contract. (*Id.*) When asked about the method of transportation required by the contract, Divyesh testified, "It is specified on the contract to some extent, and I want us to go by what's written on the contract, and I can point to you where it's mentioned on the contract." (*Id.* at 8.) After Divyesh pointed to specific parts of the written contract, Plaintiff's counsel asked, "You stated that you agreed with Mr. Hitesh Sayta that the peas were to be shipped from Chester, Montana. What is that agreement?" (*Id.* at 9.) Divyesh responded, "Basically the agreement was that we would be shipping this USA origin dry green peas from Chester, Montana, which Bespoke Group has an arrangement with." (*Id.* at 9.) Plaintiff's counsel followed with, "How was this agreed with Mr. Hitesh Sayta?," to which Divyesh responded, "Verbally." (*Id.* at 9.)

While this portion of the transcript does show that Divyesh testified to the existence of at least one term under the contract that was orally agreed but never formally included in the final written contract, Plaintiff does not identify what specific and new information it learned from this line of questioning,[6] or how it provides the basis for adding a claim for breach of an oral contract against Divyesh individually.[7] Plaintiff, moreover, presents no deposition transcripts on any new

---

[6] Plaintiff's summary judgment evidence, particularly the "Expert Report of Darren Hudson" dated August 5, 2016, shows that it was previously aware that Chester, Montana, was a potential place of departure for the shipment under the contract because Hudson stated in his report that he was "asked to address . . . the plausibility of weather related excessive delays in shipping from Lewiston, ID or Chester, MT to fulfill the contract terms." (doc. 361 at 285-88.)

[7] Plaintiff's second amended complaint asserts that its claim of "Breach of Written Contract" against Divyesh is "based upon the doctrine of lifting of the corporate veil." (doc. 36 at 8-9.) Plaintiff changed the basis of this claim on summary judgment and argued that it "need not resort to the piercing of the veil of [Bespoke] to establish liability of [Divyesh]" because privity of contract exists directly from Divyesh to Prosper when an oral contract "was entered into prior to the written document being circulated." (doc. 360 at 17.)

information about market price damages, and it also fails to explain why it waited nearly seven months after Divyesh's deposition to file this motion for leave to amend to include facts learned in the depositions. *See Grant v. Rathbun*, No. 3:15-CV-4025-D, 2016 WL 1750572, at *4 (N.D. Tex. May 3, 2016) (denying untimely motion for leave to amend when the plaintiffs "provide[d] no explanation for why they waited almost two months after learning of these [new] facts to file their motion for leave"). Though Defendants' depositions did not occur until after the scheduling order deadline to seek leave to amend, Plaintiff fails to persuasively explain why this fact excuses its untimely motion.

### 2. *Importance of the Amendment*

Under the second factor, Plaintiff must identify the importance of its untimely amendment. It argues that the proposed amendments are "absolutely critical" to preserve its breach of contract claim because "the attorney's fees attached to the breach of contract [claim] are monetarily the biggest portion of this case." (doc. 388 at 10.) Plaintiff's counsel attached an affidavit to the motion for leave stating that attorneys' fees and costs are already "an amount in excess of $500,000.00." (doc. 389 at 13.)

Under § 38.001 of the Texas Civil Practices and Remedies Code, a party may recover "reasonable attorney's fees from an individual or corporation" under a "valid claim" for breach of contract. *See Rodgers v. RAB Investments, Ltd.*, 816 S.W.2d 543, 551 (Tex. App.–Dallas 1991, no writ) (noting that a party "must prevail" on the cause of action for which attorneys' fees are available). In its second amended complaint, Plaintiff seeks attorney's fees under its "breach of written contract" claim against Bespoke and Divyesh "based on the doctrine of the lifting of the corporate veil." (doc. 36 at 8.) It was later determined on summary judgment that Plaintiff was not entitled to attorney's fees because it failed to prevail on its breach of contract claim and because §

8

38.001, as a matter of law, does not apply to limited liability companies such as Bespoke. (doc. 384 at 12 n.12); *see Hoffman v. L & M Arts*, 3:10–CV–0953–D, 2015 WL 1000838 at *5 (N.D. Tex. Mar. 6, 2015) (finding attorneys' fees not recoverable against LLC under § 38.001 because the term "corporation" does not include LLC), *affirmed by*, 838 F.3d 568, 586 (5th Cir. 2016).

Here, Plaintiff seeks leave to allege a claim for breach of an oral contract against "Divyesh Patel himself [as] a contracting party" and asks for market price damages and attorney's fees under Tex. Civ. Prac. & Rem. Code § 38.001. (doc. 388-1 at 10.) Defendants argue that Plaintiff's amendment is not important because it fails as a matter of law to state a claim against Divyesh as there are no allegations about any written agreement or memorandum of the agreement signed by Divyesh in his individual capacity as required under the statute of frauds. (doc. 393 at 2-4); *see* Tex. Bus. & Com. Code §§ 2.201(a), 2.202 (requiring that a contract for the sale of goods of $500.00 or more must be in signed writing to be enforceable).

Because it is not clear that the possibility to collect attorney's fees is a sufficiently important reason for bringing an untimely amendment, it will be assumed that the amendment is important because doing so does not affect the assessment of the four factors as a whole. *See Grant*, 2016 WL 1750572, at *4; *see Matamoros v. Cooper Clinic*, No. 3:14-CV-0442-D, 2015 WL 4713201, at *3-4 (N.D. Tex. Aug. 7, 2015) (assuming *arguendo* that amendment adding two defendants was important "[b]ecause doing so d[id] not affect the court's assessment of the four factors holistically," and concluding that plaintiff had failed to demonstrate good cause under Rule 16(b)(4) to amend the scheduling order).

### 3. *Potential Prejudice*

The third factor requires consideration of the potential prejudice that Plaintiff's amendment will cause Defendants. Plaintiff argues that Defendants will not face any prejudice because they

9

"already had all the discovery on the issues of the market price and the oral contract." (doc. 388 at 11.) It alleges that Divyesh "already testified to the verbal contract" in his deposition; that its second amended complaint previously identified how the market price "moved up;" and that Defendants' counsel has already deposed Plaintiff's expert on market price damages with "all the documents that Plaintiff will rely on" as evidence of the increase in the market price. (*Id*. at 11.)

Defendants respond that they conducted discovery based upon Plaintiff's claims on the written contract between Prosper and Bespoke that sought damages as calculated by the actual cost Prosper paid to "cover" its requirement for peas. (doc. 393 at 8.) Relying upon the claims and the allegations in the second amended complaint, Defendants did not allege the affirmative defense of the statute of frauds, did not designate its own expert on the fair market value of peas, and sought to exclude Hudson's expert opinion as not relevant to the calculation of the alleged "cover" damages. (docs. 47, 339.) If Plaintiff is granted leave to amend at this advanced stage in the litigation, Defendants will be potentially prejudiced as they will have to amend their responsive pleadings, conduct further discovery, and file additional dispositive motions. *See Valcho v. Dallas Cty. Hosp. Dist.*, 658 F. Supp. 2d 802, 815 (N.D. Tex. 2009) (noting that prejudice is frequently found "when a party seeks leave to amend after the opposing party has filed a motion for summary judgment") (collecting cases); *see also Navarro v. Microsoft Corp.*, 214 F.R.D. 422, 424 (N.D. Tex. 2003) (finding prejudice even though the new causes of action in the proposed amended complaint were "virtually identical," because the defenses were not necessarily the same). This suit would, in essence, have to start over after three years of extremely contentious litigation. *See King v. Life School*, No. 3:10–CV–0042–BH, 2011 WL 5242464, at *2 (N.D. Tex. Nov. 3, 2011) (finding potential prejudice on a motion for leave to amend because "allowing the new claims would require essentially restarting the lawsuit for amended pleadings, discovery, and motions"). Because the

amendments could cause significant prejudice to Defendants, this factor weighs against granting leave to amend.

### 4. *Possibility of a Continuance*

The fourth factor allows consideration of a continuance to cure any potential prejudice to a defendant. *See S & W Enters*., 315 F.3d at 536. Courts are not required to grant a continuance in all cases, however. *See Region Bank*, 2012 WL 1191850, at *5 (citing *Reliance Ins. Co. v. Louisiana Land & Exploration Co.*, 110 F.3d 253, 258 (5th Cir. 1997)). The decision to grant a continuance is within the sound discretion of the court. *S & W Enters.,* 315 F.3d at 537.

Here, Plaintiff argues that a continuance is available because no findings or determinations have been made on "the issues relating to the market price having risen, and the affirmative defenses asserted by Defendants to ship the goods." (doc. 388 at 12.) It further alleges that it would agree to a continuance if Defendants sought one.[8] (*Id*. at 12.)

This case was filed on April 22, 2014, with a discovery period lasting for nearly three years, and has a docket of nearly 400 filed pleadings. All of the deadlines under the scheduling order have already expired, even after being extended on four separate occasions, and all that remains is the final trial on Plaintiff's fraud claim. (*See* docs. 33, 146, 174, 315, 355.) Plaintiff has been granted a fair opportunity to allege and develop his case. *See Gentilello v. Rege*, 627 F.3d 540, 546 (5th Cir. 2010) ("At some point a court must decide that a plaintiff has had a fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss

---

[8] Plaintiff also argues that § 378 of the Restatement (Second) of Contracts "would permit an election of remedy . . . . even at an advanced stage in the proceedings." (doc. 388 at 12.) Plaintiff, however, does not explain how this Restatement provision applies to the relevant statute in this suit under the Tex. Bus. & Com. Code, which specifically includes a comment explaining that a damage calculation based upon the changes in the market price "provides a remedy which is completely alternative to cover under the preceding section and applies only when and to the extent that the buyer has not covered." Tex. Bus. & Com. Code § 2.713 cmt.5.

11

the suit.") (citing *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986)). Even if another continuance is granted, it would not cure the potential prejudice to Defendants of having to respond to these amendments, conduct even more discovery, and continue with their financially burdensome defense. *See Grant v. Rexon Indus. Corp.*, No. 3:14-CV-3940-L, 2016 WL 9526464, at *2 (N.D. Tex. July 13, 2016) (denying untimely motion for leave to amend because "allowing the requested amendment at this late juncture will unnecessarily delay the resolution of this litigation"); *see also King*, 2011 WL 5242464, at *3 (noting that a "continuance is not advisable at such a late stage of trial").

Considering the four factors as a whole, Plaintiff has failed to meet its burden to establish "good cause" to modify the scheduling order deadlines and permit an untimely amendment to its complaint. Plaintiff's motion for leave to amend is denied on this basis.

**B.** **Rule 15(a)**

Plaintiff also argues that its motion for leave to amend its complaint should be granted under "the more liberal standard" of Rule 15(a). (doc. 338 at 2-4.)

Under Rule 15(a), pleadings may be amended once as a matter of course before a responsive pleading is served, and thereafter by leave of court. *See* Fed. R. Civ. P. 15(a). The rule also provides that such leave "shall be freely given when justice so requires," but "it is by no means automatic." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993) (citing *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. 1981). "In deciding whether to grant leave to amend, the district court may consider a variety of factors in exercising its discretion, including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." *Jones v. Robinson Prop.*

12

*Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005); *see McClure v. Turner*, 481 F. App'x 167, 171 (5th Cir. 2012).

Because Plaintiff's request for leave to amend is untimely, the "more liberal standard of Rule 15(a) applies only if [Plaintiff] demonstrates good cause for the modification of the schedul[ing] order" to allow amendments after the deadline. *Sapp*, 406 F. App'x at 868-69 (citing *S & W Enters., L.L.C.*, 315 F.3d at 536). As previously determined, Plaintiff fails to demonstrate "good cause" and, as such, the standard for leave to amend under Rule 15(a) does not apply. *Id.* Even if the standard did apply here, there are "ample and obvious" reasons for denying leave to amend due to undue delay and prejudice as the proposed amendments would, in essence, require this suit to begin anew with additional discovery and dispositive motions. *See Smith v. EMC Corp.*, 393 F.3d 590, 596 (5th Cir. 2004) (holding that an amended complaint causes prejudice when it asserts a new claim requiring the defendant "to reopen discovery" or prepare a new defense); *see also Atrium Cos., Inc. v. ESR Assocs., Inc.*, No. 11-CV-1288, 2012 WL 4215103 at *8 (S.D. Tex. Sept. 18, 2012) (citations omitted) (denying leave to amend when defendant had invested considerable effort in finding and paying experts, attending hearings, drafting pleadings and conducting discovery over 18 months of litigation).

To the extent that Plaintiff seeks leave to amend under Rule 15(a), it is denied.

### III. CONCLUSION

Plaintiff's motion for leave to amend its complaint (doc. 388) is **DENIED**.

**SO ORDERED this 20th day of November, 2017.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE